339 So.2d 788 (1976)
STATE of Louisiana
v.
Gary M. MARMILLION.
No. 58053
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 14, 1976.
*790 Frank J. Gremillion, Hynes & Gremillion, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Douglas P. Moreau, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
The District Attorney of East Baton Rouge Parish charged that defendant, Gary M. Marmillion, "on or about the second (2nd) day of July, 1974, at and in the Parish. . . aforesaid, feloniously violated La. R.S. 14:60, in that he committed aggravated burglary of a structure belonging to Tiger Plaza Apartments. . . ." Defendant pleaded not guilty and not guilty by reason of insanity. After trial by jury, defendant was found guilty of aggravated burglary and sentenced to fifteen years at hard labor. Thirteen errors are assigned on this appeal.

Assignment 1
Prior to trial on October 29, 1975, the State filed a written notice of the State's intent to introduce into evidence at the trial testimony dealing with defendant's presence at and around the scene of the alleged crime on a date approximately three to five days prior to the crime and also on the evening of the crime itself. The notice set forth that it was the State's belief that under Louisiana law and jurisprudence the notice was not required by any statute or decision; however, the notice was given in order to insure a fair trial and to avoid any prejudicial surprise to defendant.
Then at the trial, when the State called Debra Jeansonne to the stand, defense counsel objected, anticipating that she would, in accordance with the notice, testify to defendant's presence at the scene of the alleged crime approximately three to five days prior to its occurrence; and that such evidence was irrelevant and immaterial. Defense counsel argued that the decision in State v. Prieur, 277 So.2d 126 (La.1973) required notice not only of offenses but of attempts to commit crimes also. Under this theory, it was asserted, the anticipated testimony to the effect that defendant was near the scene of the crime three to five days before it occurred was such an attempt to commit a crime. This meant, according to the defense, that a hearing must be held before trial to determine whether the prior offense or attempt met the tests of similarity, etc., set forth in the Prieur decision. Defense counsel also argued that the notice was not timely. After these objections, the testimony of other witnesses intervened, but when Debra Jeansonne was recalled as a witness the objections were renewed, overruled and this error is assigned.
At the outset it is noted that the pages of the record, designated by the defense to support this assignment of error, contain only this testimony of Debra Jeansonne:
She was living with Connie Breaux, Chris Kraemer and Denise Jeansonne at 4445 Tigerland, the Tiger Plaza Apartments, on July 2, 1974. The apartment they occupied was on the ground floor and had two bedrooms and a large living room. About midnight on July 2, 1974 she was sitting at the rear of the living room with her back to a sliding door. Suddenly she heard a rumbling sound, looked toward the front door, saw no one, and glanced over her shoulder.
*791 Gary Marmillion was coming through the sliding door and draperies.
He was wearing a dark T-shirt and dark trousers and his hair was "slicked back". He pulled a gun on her and commanded her to lie on the floor. In a few minutes he brought her into the back bedroom where her sister Denise Jeansonne was attempting to hide. Debra was then forced to go to the other bedroom door, which was closed, to tell Connie Breaux and Chris Kraemer to come out, "or else".
With Marmillion's gun at her temple, Debra called to Connie and Chris to come out, but they declined to do so. After the fifth time, there was a knock at the front door and Marmillion hurdled a chair and ran out through the sliding door.
Denise let their friend Randy Roach, a neighbor, in at the front door; he had responded to a telephone call for help which Connie and Chris had placed from their locked bedroom. The police arrived shortly thereafter and all participants were questioned. Later they were summoned to the police station to identify a suspect, who turned out to be the defendant.
Nowhere in this testimony is there a reference to defendant's presence at and around the scene of the alleged crime on a date approximately three to five days prior to the crime. There is only testimony showing his presence at the scene of the crime as it occurred on the evening of the crime itself.
This testimony is not evidence of a prior offense as contemplated in Sections 445 and 446 of Title 15 of the Revised Statutes or the Prieur decision. Objection to this testimony was therefore unfounded.

Assignment 2
After Debra testified, her sister Denise was called as a State witness. Defense counsel again entered the same objection urged to Debra's testimony. The objection was again overruled, and the ruling is the basis of this assignment of error.
Denise, too, testified only to facts and circumstances surrounding the actual commission of the crime. Her testimony corroborated that of her sister. The only reference to facts outside the immediate time and place of the alleged crime was testimony relating to the identification of the defendant at the police station later that same night.
As in the case of the objection to the testimony of Debra, nothing in the testimony of Denise is relevant to the defense objection. The objection is likewise unfounded.

Assignment 3
Then Kristina (Chris) Kraemer was called as a State witness. Again defense counsel entered the same objection urged under assignment 1, and again the court overruled the objection.
Kristina testified that she and Connie had remained awake in bed late on the night of July 2, 1974 talking. Through the closed door of their bedroom she heard Debra in the living room "kind of gasp" and "kind of yell" and stop. "[A] muffled man's voice" followed. They were not expecting anyone that night and these noises startled her. She alerted Connie who was drowsing. Debra was then heard to say something like "don't hurt me, please leave me alone," and then the man's voice again. Connie was then told to call the police. As a result the police and a neighbor, Randy Roach, were called.
The voices in the front room, she said, "kind of moved . . . right by our doorway." In the meantime she had locked the door and pushed the dresser in front of it. All of a sudden they heard Debra's pleas to them to open their door. Instead they left the room through a back window,
crossed the courtyard and encountered Randy on his way to the apartment in response to Connie's call. When he arrived, Randy knocked at the apartment door, and Denise, in a state of panic, let him in. The police arrived shortly thereafter. Connie and Chris never saw the intruder.
Nowhere in Chris' testimony is there the slightest reference to any fact or circumstance *792 preceding the actual burglary on July 2, 1974. For the reasons heretofore stated this assignment is also without merit.

Assignment 4
Finally Connie Breaux was called as a State witness, and the defense again entered the same objection urged under Assignment 1. For the fourth time the objection was overruled.
Connie's testimony corroborated that of Chris in all essential details. At the lineup which they all attended she was asked to identify anyone she had ever seen around the apartment before. She was unable to identify anyone. This assignment, like the three preceding it, is without merit.
At all stages of the trial relating to the issue presented by Assignments 1, 2, 3 and 4, defense counsel and the State's attorney argued whether the Prieur decision applied to a fact situation in which the testimony disclosed that defendant was merely near the scene of the offense three to five days before it occurred. At no time was the sufficiency of the bill of information mentioned. It was in this context that the trial judge's ruling was made.
When the assignments of error were filed they asserted that
"[t]he basis of the objection referred to herein, was that the testimony of said witness, Debra Jeansonne, was irrelevant and immaterial to the crime charged in the bill of information, and additionally, that said evidence could only be introduced upon the filing of a proper notice as required by the Prieur decision and a hearing thereon, neither of which was present in the case."
In addition to the Prieur question, the defense later argued that the State, in the bill of information, alleged ownership of the burglarized structure in a fictitious entity, the Tiger Plaza Apartments, then introduced evidence of another burglary of the apartment of Debra and her roommates.
As this argument is understood, the bill of information did not adequately advise the defendant of the nature and cause of the accusation as required by Section 13 of Article I of the Constitution of 1974. See also La.Const. art. I, § 10 (1921). This contention is based upon the fact that the bill of information erroneously charged that the owner of the structure burglarized was "Tiger Plaza Apartments". And, since an allegation that the ownership of the burglarized structure is an essential averment of the short-form indictment, which the State chose to use, it was bound by the short form prescribed by Article 465 of the Code of Criminal Procedure. The State must therefore prove the ownership of the structure burglarized. In addition, the argument continues, the State has charged burglary of the "Tiger Plaza Apartments" but has submitted proof of another distinct crime, for the evidence did not concern the burglary of "Tiger Plaza Apartments" but was, instead, evidence of a burglary of an apartment leased by Debra Jeansonne and the other three girls.
No failure to advise the defendant of the nature and cause of the accusation is demonstrated here. As the record discloses, the place burglarized was well-known to all persons involved as the "Tiger Plaza Apartments"; there is an abundance of evidence that it was the structure burglarized and there is no evidence to the contrary. State v. Wright, 254 La. 521, 225 So.2d 201 (1969). It is implausible under these circumstances to contend that defendant was not advised of the "nature and cause" of the accusation. For, if "Tiger Plaza Apartments" was not the legally technical name of the owner, it was, nevertheless, the assumed name in which the owner was doing business. By referring to "Tiger Plaza Apartments" as the structure burglarized and as the owner thereof, the bill of information not only names and describes the building or structure burglarized as Article 465 requires, but it also names the owner of that structure.
Whether the State proved the allegations of the bill of information relating to the ownership of the apartment was a question *793 for the jury. Defendant filed no motion for a bill of particulars to obtain further clarification of the bill of information; nor was a motion to quash filed alleging wherein the bill was defective.
When, in fact, the accused has been fairly informed of the nature and cause of the accusation by the indictment and has not been prejudiced by surprise or lack of notice, the technical insufficiency of the indictment may not be questioned after conviction. This is especially true where, as here, the indictment is a plain, written, concise and definite statement of the essential facts constituting the offense charged. La.Code Crim.Pro. art. 464. No motion to quash was filed before trial raising the sufficiency of the indictment, and the accused is protected against further prosecution for the same offense by reference to the record in the instant prosecution. La.Code Crim. Pro. arts. 531-38; State v. Brown, 321 So.2d 516 (La.1975); State v. Moore, 320 So.2d 208 (La.1975); State v. Santos, 309 So.2d 129 (La.1975); State v. Mason, 305 So.2d 523 (La.1974); State v. James, 305 So.2d 514 (La.1974).
This defense contention that the bill of information is insufficient is without merit.

Assignment 5
Outside the jury's presence, the State laid the predicate for introducing defendant's inculpatory statement to Officer Sansone, and again before the jury. However, anticipating that Officer Sansone would testify to the inculpatory statement, defense counsel objected that the witness had testified earlier that he could not recall everything the defendant said. It was the defense position that defendant was entitled to have the entire statement produced, not just a part of it.
The officer was permitted to testify to the statement made to him by the defendant. In particular, defendant's statement placed him at the scene of the crime on July 2, 1974. His version was that he entered the apartment armed with a gun and when Debra Jeansonne screamed he left. In recounting defendant's version of the events Officer Sansone admitted that he could not recall verbatim everything defendant told him. Defense counsel contends a complete recital of everything defendant said to Officer Sansone would undoubtedly produce other exculpatory or explanatory statements.
It is true that Section 450 of Title 15 of the Revised Statutes mandates that every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
Nevertheless, in the absence of proof to the contrary, the fact that the purported statement of the accused as testified to by the investigating officer does not consist of a verbatim reiteration of the conversation between them, due to the witness' inability to recall or other valid explanation, the rights of the accused under Section 450 are not violated. The law does not require the production of nonexistent portions of the confession or portions which cannot be recalled. State v. Domino, 234 La. 950, 102 So.2d 227 (1958). See also State v. Odom, 292 So.2d 189 (La.1974); State v. Bickham, 239 La. 1094, 121 So.2d 207 (1960); State v. Kennedy, 232 La. 755, 95 So.2d 301 (1957); State v. Desroches, 48 La.Ann. 428, 19 So. 250 (1896).
This assignment is without merit.

Assignment 6
Meredith Katuski testified on behalf of the State that just prior to midnight on July 1, 1974, about one hour before the alleged offense in the early hours of July 2, 1974, someone knocked at her door at the River Road Apartments in the Tigerland Subdivision, the same subdivision in which the Tiger Plaza Apartments were located. When the caller declined to say who he was, she refused to open the door. From an upstairs window of the apartment she looked out at him and detected a person resembling someone she had seen the week before in the laundry room. After lingering *794 a while the caller departed in the direction of the Tiger Plaza Apartments.
The defense objected to this testimony, contending that it was evidence of an extraneous offense committed by the defendant. This being the case, it is argued, the introduction of this testimony should have been preceded by a notice that the State would attempt to show a prior offense of a similar nature; also, a hearing should have been held in advance outside the presence of the jury, to determine whether the testimony met the standards of Sections 445 and 446 of Title 15 of the Revised Statutes and the decision in State v. Prieur, 277 So.2d 126 (La.1973). As already set forth in assignment 1, the State did put defendant on notice, although the notice stated that the State was not required to do so by any statute or decision, the notice being given to assure a fair trial and to avoid prejudicial surprise to the defendant.
It is difficult to categorize this testimony as a separate, extraneous offense. The testimony more properly relates, in time and place, to acts constituting a part of a continuing series of events culminating in the offense charged and is testimony in aid of the witness' identification of the defendant. Defendant's presence at the washateria was not, in itself, an offense. And knocking at Meredith Katuski's door was no crime.
An objective view of this evidence supports the ruling of the trial judge that it did not involve an effort on the part of the State to produce evidence of similar offenses under Sections 445 and 446 of Title 15 of the Revised Statutes. It was not necessary, therefore, for the State to give the notice it did give in this case.
The contention that a prior hearing is required when the State attempts to introduce evidence of similar offenses to prove knowledge, system or intent is not relevant under our finding since this testimony is not of that character. Furthermore, no authority requires such a hearing, and no authority is furnished to support the contention.
This assignment is without merit.

Assignment 7
At the conclusion of the State's case in chief, defense counsel moved for a directed verdict contending that the State had failed to introduce any evidence that defendant had burglarized a structure owned by Tiger Plaza Apartments, as alleged in the bill of information. Instead, according to the defense, the State proved burglary of an apartment leased by Debra Jeansonne and her three roommates.
When the defense argues that the apartment was leased by Debra Jeansonne and her roommates from the Tiger Plaza Apartments, and the evidence supports that fact, there is some evidence, albeit very little that Tiger Plaza Apartments is the owner of the structure burglarized. Generally, it may be inferred, the owner is the lessor of apartments.
While these references to the record are made to answer the defense contention, there is another consideration which bears mention. The short-form indictment does require reference to the owner of the structure burglarized, and this requirement has been complied with. La. Code Crim.Pro. art. 465. But the requirement is informational and cannot have the effect of adding elements to the crime not contained in the statute defining the crime. The short form indictment is designed as a simplified method of informing defendant of the nature and cause of the accusation. In this case, even if the State did not prove ownership, the bill of information complied with the short form indictment by naming the owner. In any event, proof of ownership of the structure burglarized is not an essential element of the crime of aggravated burglary as defined in Article 60 of the Criminal Code. The statute reads:
"Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or

*795 (2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
"Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years."
Moreover, the 1975 amendment to Article 778 of the Code of Criminal Procedure deprives the trial judge of the right to direct a verdict of acquittal in jury cases. This amendment being procedural in nature and effective September 12, 1975 is applicable to this trial held some time thereafter on October 29-31, 1975. The trial judge could not therefore direct a verdict.

Assignments 8, 10 & 11
Before argument to the jury, the defense submitted several requests for special charges. The trial judge declined a special charge by the defense which read:
"I further charge you that if you find that defendant has proven by a preponderance of the evidence that he was insane at the time of the commission of the offense charged, then I instruct you that you must return a verdict of not guilty by reason of insanity unless the state has proven sanity beyond a reasonable doubt."
To the trial court's refusal to give the charge, defense counsel objected and filed assignment 8. Assignment 10 refers to the denial of a motion for a new trial. The motion alleged that the guilty verdict was contrary to the law and the evidence because there was proof that defendant was insane and unable to distinguish between right and wrong at the time of the offense. Assignment 11 pertains to the refusal of the motion for a new trial based upon the refusal of the judge to give the jury requested special charge number 2 quoted above.
Initially it is noted that assignment of error 10 is without merit. This Court's appellate review is limited in criminal cases to questions of law, La.Const. art. V, § 5(C) (1974). A claim that the verdict is contrary to the law and the evidence because the evidence proved defendant's insanity is a question of fact for the jury.
When the trial judge refused to give defendant's requested special charge number 2, defendant did not object to the ruling, instead he waited until the jury retired to deliberate. The State contends it was then too late to object because the judge could not then correct his ruling and thereby avoid a possible error and a new trial. To support its contention the State cites State v. Beard, 312 So.2d 278 (La. 1975), where we held that a defendant waived his objection to a charge by not objecting when the charge was given, but objecting only after the jury was retired for deliberation. The Beard case did not involve a requested special charge. The decision was based upon the failure to object contemporaneously to the judge's general charge.
Earlier in State v. Fink, 255 La. 385, 231 So.2d 360 (1970), we held that when the defense failed to request a special charge on entrapment, objection to the failure to charge entrapment could not be raised for the first time on a motion for a new trial.
The decisions in both the Beard and the Fink cases were based upon Article 841 and both are correct because no written requests for special charges by defendant were involved. However, the case at bar is distinguishable. Here the defendant submitted a request for special written charges as required by Article 807 of the Code of Criminal Procedure. As amended in 1974, Article 841 of the Code no longer requires an objection to the court's ruling on "any written motion."
Although special written charges are not referred to as motions in the code, they have many of the indicia of such; and, insofar as providing a proper basis for appellate review, written charges furnish the same information. The language of Article 841 that an objection is not required to the Court's ruling on any written motion was undoubtedly designed to relax the former *796 rule which made few exceptions to the requirement that a bill of exceptions must be reserved to any ruling complained of. In this light, the State's contention would require a construction of Article 841 which is not warranted under these circumstances. La.Code Crim.Pro. arts. 2, 3.
Considered on its merits the requested charge need not have been given for it requires qualification, limitation or explanation; and, those portions of the charge not requiring qualification are included in the general charge. La.Code Crim.Pro. art. 807. A universally accepted principle in criminal prosecutions requires that if the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility. La.Rev.Stat. 14:14. On the other hand, a presumption exists that a defendant is sane and responsible for his actions. By statute in Louisiana this presumption relieves the State, in whose favor it exists in a criminal prosecution, from the necessity of any proof. La.Rev.Stat. 15:432. The burden falls, therefore, on the defendant to overcome this presumption and establish his insanity by a preponderance of the evidence. La.Code Crim.Pro. art. 652; State v. Clark, 305 So.2d 457 (La.1975); State v. Toon, 172 La. 631,135 So. 7 (1931); State v. Seminary, 165 La. 67, 115 So. 370 (1928); State v. Scott, 49 La.Ann. 253, 21 So. 271 (1897). Constitutionality of the presumption of sanity and the defendant's burden to overcome that presumption has been settled by the highest authority. Leland v. Oregon, 343 U.S. 790 (1952). See also Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (Rehnquist, J., concurring).
The State's traditional burden of proof is to establish beyond a reasonable doubt all necessary elements of the offense. Once this rigorous burden of proof has been met, it having been shown that defendant has committed a crime, the defendant should bear the burden of establishing his defense of insanity in order to escape punishment. The State is not required to produce countervailing proof of sanity; the question whether defendant has affirmatively proven his insanity and should not be held responsible for his actions is one for the jury.
The trial judge correctly charged the jury as follows:
". . . In this case the accused has entered a dual plea of not guilty and not guilty by reason of insanity. As a consequence of such a plea, you must first determine whether or not the accused committed a crime such as the ones named when I instructed you as to the responsive verdicts that you may return in the case. If you are convinced beyond a reasonable doubt that the accused did commit any of these crimes, any one of these crimes, then you must proceed to a determination of whether he was sane at the time the crime was committed and thereby criminally responsible for committing it. Preliminarily, I instruct you that the law presumes every person to be sane. This presumption continues to exist until it is overcome or outweighed by evidence to the contrary. Under the law of this state, insanity at the time of the commission of a crime exempts the offender from criminal responsibility. And Article 14 I've already read to you. It provides as follows: If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility. A person is legally insane if his mind is so impaired or deranged, whether from nature or by accident or disease, as to render him incapable of planning and acting, or of having knowledge of the nature and quality of the act he is doing; incapable of realizing his responsibility to society and to others; in sum, incapable of distinguishing between right and wrong. While the state has the burden of proving beyond any reasonable doubt that the *797 accused is guilty, the accused has the burden of proving insanity at the time of the crime. However, the accused does not have to prove his insanity beyond a reasonable doubt; the law requires that the defense of insanity at the time of the crime be established by a preponderance of the evidence. By preponderance of the evidence is meant that superior weight of evidence, which, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other. Preponderance of the evidence has reference to quality of evidence and not quantity or number of witnesses. With particular reference to the issue of the sanity or insanity of an accused as of the time of the commission of an offense, it is not determinable on the testimony of the medical experts alone when there is other proof. Consideration must be given by the jury to all of the admissible evidence bearing on such mental condition, the testimony of the individual doctors who made up the sanity commission, the opinions of other experts and of lay witnesses, the conduct and actions of the accused, and the like. Subnormal intelligence or weakness of mentality does not in and of itself constitute legal insanity. The test, as I have previously stated, is whether the person urging the defense of insanity can distinguish between right and wrong. If you acquit the accused on account of insanity at the time of the crime, your verdict should so state, that is, the form of your verdict would be, not guilty by reason of insanity. Whether the accused was sane or insane at the time of the alleged crime is an issue for you, the jury, to decide."
Assignments 8 and 11 are without merit.
The substance of contentions raised by assignments 9, 12 and 13 have been considered under assignments 1, 2, 3, 4 and 7 and found to be without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs, disagreeing with the statement in treatment of assignment no. 7 that the amendment abolishing the directed verdict was purely procedural.