373 So.2d 1284 (1979)
STATE of Louisiana
v.
Joseph V. BONANNO and Roy J. Dorman, Jr.
No. 63393.
Supreme Court of Louisiana.
June 25, 1979.
Rehearings Denied September 4, 1979.[*]
*1286 Edward M. Baldwin, New Orleans, Richard V. Burnes, Gravel, Roy & Burnes, Alexandria, for defendant-appellant Joseph V. Bonanno.
Donald R. Minor, Shreveport, for defendant-appellant Roy J. Dorman, Jr.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Patrick G. Quinlan, Glen R. Peterson, Asst. Attys. Gen., Baton Rouge, for plaintiff-appellee.
CALOGERO, Justice.
Defendants Bonanno and Dorman were convicted after a jury trial of distribution of cocaine, a violation of R.S. 40:967B(1). Each defendant was sentenced to twenty-one years imprisonment. In seeking reversal of their convictions and sentences, Bonanno and Dorman present numerous assignments of error, many of which are urged by each of them. The arguments meriting lengthy discussion deal with the state's failure to provide defendant Dorman with discovery to which he was entitled (Dorman and Bonanno Assignments Nos. 13 and 16) and the trial court's sentencing of defendant Bonanno without adhering strictly to the requirement of Article 894.1 of the Code of Criminal Procedure that there be a record statement of the considerations taken into account and the factual basis therefor in imposing sentence. (Bonanno Assignments Nos. 37 and 38).
The drug transaction which culminated in the defendants' arrests had been preceded by months of planning by the undercover Drug Enforcement Administration (DEA) agents involved, during which time there were numerous contacts between them and the defendants. In December of 1976 undercover DEA Agent Hawkins established contact with defendant Dorman through a "borrowed" confidential informant. A series of telephone contacts between these men involving a possible cocaine sale ensued during the month of April and the early weeks of May, 1977. After the last telephone contacts on May 11, 1977, the agents met the defendants in a Shreveport motel and arrested them as soon as the defendants actually displayed the large amount of cocaine they brought to sell.
Prior to trial, Dorman's counsel filed a motion for discovery wherein he requested notice of the existence of any oral statement or confession of any nature made by the defendant which the state intended to offer as evidence at trial; the motion sought information as to when, where and to whom the confession or statement was *1287 made. In response to this portion of Dorman's discovery motion, the state took the position that an answer was not required. Seven months later, in the middle of trial, the state questioned DEA Agent Hall regarding the nature of a telephone conversation he had with Dorman prior to the date of the offense. Dorman's counsel objected to the inquiry, arguing that the information sought was irrelevant. The jury was removed, and Dorman's attorney further protested that the state's inquiry was improper redirect examination. In arguing his objections Dorman's counsel indicated his belief that the call to which the state referred was one of a series which took place during December, 1976. The state announced that its intent was to have the agent testify regarding a call which took place in April, 1977, the month preceding the offense. Counsel for Dorman then stated as additional grounds for his objection the fact that he was given no discovery whatsoever, no notice, of any phone call in April. The state countered that such discovery was not available and the trial court allowed the testimony.
Still later during trial when the state questioned DEA Agent Hawkins about the substance of telephone conversations with Dorman on May 9, 10 and 11, 1977, Dorman's counsel renewed his complaint that he had been given no discovery and therefore had no knowledge of any phone conversations, even though the defense had made a request prior to trial. Again the state responded that the law does not allow discovery of such conversations and the trial court again overruled the objection, allowing the state to elicit testimony concerning these conversations.
Throughout the trial proceedings, Dorman endeavored to convince the jury that he was merely a reluctant middle man, enticed into his part of the drug transaction at the urging of the "borrowed" confidential informant who introduced him to undercover Agent Hawkins. However, testimony setting forth the substance of various telephone conversations in which Dorman participated, as well as the fact that so many calls took place, was particularly damning, because unhesitating participation was thereby indicated.[1] The evidence was clearly important to the state's case.
The state's representation in response to Dorman's discovery motion that it is not required to give notice of oral statements intended for use at trial or relate information as to when, where and to whom the statements were made is patently erroneous. Code of Criminal Procedure Article 716 unequivocally provides that upon defense motion, "... the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom *1288 ... [it] was made." Because the type of notice contemplated by the statute is virtually identical to that required in connection with oral statements by Code of Criminal Procedure Article 768 as interpreted by State v. Sneed, 316 So.2d 372 (La. 1975), it is clear that notice is required, when sought by the defense, for the same reasons that the Article 768 notice is required.[2]
As in cases where the state has failed to give the notice required by Article 768 we would ordinarily determine whether, and to what extent, Dorman has shown he was prejudiced by the state's failure to provide the discovery to which he was entitled before deciding what consequences would flow from the state's non-compliance with the statutory mandate.[3]See e. g., State v. Qualls, 353 So.2d 978, 983 (La.1978). However, in the instant case, Dorman's arguments that the court erred in not excluding the evidence concerning his telephone statements or declaring a mistrial based on the state's failure to provide mandated pretrial discovery are unavailing. Notwithstanding his status as the moving party in connection with the discovery motion, the defendant did not provoke a hearing at which the trial court could have been called upon to judge the sufficiency of the state's response. Therefore, even though a defense request was couched in language which literally tracked the statute (clearly indicating entitlement to a response to the request for the information sought), Dorman did nothing to call to the court's attention the need for, and his entitlement to, an order mandating the discovery of the information sought. Dorman's inaction effectively deprived the trial judge of an opportunity to make a ruling which would have prevented the commission of error. Even though the discovery motion is a written motion, in connection with which an objection is ordinarily not required to permit the urging of error on appeal (C.Cr.P. art. 841), the accepted procedure utilized in connection with discovery motions, as in the case of applications for particulars,[4] virtually precludes the court's scrutiny unless the defense provokes a hearing to dispute the sufficiency of the state's response and thus causes the matter to be brought to the court's attention.
Furthermore, during the course of trial when the focus of the state's examination clearly disclosed it would present evidence which the defense had a right to discover prior to trial the defense not only declined to argue the clear provisions of Article 716 which would have evidenced the merit of its objection, but failed to seek the remedies afforded by Code of Criminal Procedure Article 729.5 in the case of a failure to *1289 comply with the discovery statutes.[5] At that juncture, had defense more fully articulated the right he asserted and the basis for that right, the trial judge could have elected to permit discovery at that point and grant a recess, if one was deemed necessary, to allow defense the opportunity to prepare to meet the evidence. We conclude that by failing to object in any way to the state's response, by failing to state for the court during trial his basis for complaining of the lack of discovery, and by failing to request the trial court to grant one of the remedies provided by article 729.5 for failure to comply with the discovery rules, Dorman effectively waived his right to be afforded any relief on appeal. See, e. g., State v. Qualls, supra. This argument is without merit.
The next argument requiring full discussion has merit, unlike the preceding argument. It sets forth that the trial court sentenced defendant Bonanno without strictly adhering to Article 894.1's requirement that there be a record statement of considerations taken into account and the factual basis therefor in imposing sentence.
The jury returned guilty verdicts as to both Dorman and Bonanno on May 16, 1978. Dorman was brought before the court for sentencing on May 18, 1978, at which time the court pronounced a sentence of twenty-one years and expressed its view that it should impose a sentence of imprisonment because of the undue risk that another crime would be committed during a period of suspension or probation and because a lesser sentence would deprecate the crime's seriousness. The court mentioned Dorman's previous heroin conviction in connection with its determination of the applicability of the guideline concerning undue risk of commission of another crime.
A week later, Bonanno appeared before the court for sentencing. At that time, the court announced that it would "... adopt reasoning stated at the sentencing of Mr. Roy Dorman to be equally applicable in the sentencing of this defendant as far as the sentence guidelines set forth by the Louisiana Legislature." Thereupon it sentenced Bonanno to twenty-one years imprisonment. Bonanno complains to this Court that the trial court imposed an excessive sentence.
As previously noted, one of the considerations of the court in imposing sentence on defendant Dorman was that there was an undue risk of commission of another crime. The factual basis stated for this consideration, in Dorman's case, is that Dorman had a previous heroin conviction and had admitted on the stand that he continued to be involved in drugs during the period between his 1971 heroin conviction and this conviction. If indeed, there was a basis for determining that the undue risk of commission of another crime applied to Bonanno as well, Dorman's heroin conviction and drug involvement does not provide that basis, and the trial court failed to state any factual basis for that sentencing consideration, where Bonanno was concerned. In order to properly review Bonanno's claim of excessiveness we must require compliance with Article 894.1's mandate. See, e. g., State v. Cox, 369 So.2d 118 (La.1979). For this reason, we vacate defendant Bonanno's sentence and remand in order that the trial judge may fully comply with the requirement of Article 894.1C that there be stated for the record considerations taken into *1290 account and the factual basis therefor in imposing sentence. That compliance will provide an adequate record which will facilitate this Court's review for excessiveness.
Other Assignments
The court has determined that the other assignments presented by defendants Bonanno and Dorman are lacking in serious merit. They are set forth briefly in the following discussion.
The defense claims that the denial of a continuance sought when an editorial denouncing Florida drug traffic appeared in a Shreveport paper on the day trial commenced (thus possibly affecting the jury) was error. A review of the record amply supports the trial judge's denial of a continuance. Careful, individual voir dire examination on the issue, out of the presence of every other member of the jury venire, revealed that only five of the prospective jurors had read the editorial prior to coming to court. Of those five, three prospective jurors were successfully challenged for cause by the defense. Of the remaining two jurors the defense accepted one juror at a time when the exercise of a peremptory challenge was available and the state peremptorily challenged the other. Under the circumstances, the trial court's denial of the continuance was not an abuse of discretion. C.Cr.P. art. 712. This assignment is lacking in merit. (Dorman and Bonanno Assignments No. 1).
During voir dire the prosecutor explained that the entrapment defense can be rebutted by showing a defendant's predisposition to commit the crime. In explaining this concept, the prosecutor stated that a showing that a defendant had previous involvement with the law, while not dispositive of his guilt of the instant offense, bears upon the inquiry as to whether that person was predisposed to commit the offense as to which he urges the entrapment defense. Dorman's attorney requested removal of the prospective jurors from the courtroom and, out of their presence, moved for a mistrial, urging that the prosecutor's statements improperly implied the defendants committed past crimes and thereby "... forces us to make our client give up their [sic] right against self-incrimination...."
Before the prosecutor attempted to probe the jury regarding its appreciation of the concept of predisposition and what evidence might tend to show predisposition, Bonanno's counsel had unequivocally stated to prospective jurors that the defense theory was entrapment. The rationale of State v. Batiste, 363 So.2d 639 (La.1978), (on rehearing), requires that a clear demonstration of defense intent to urge entrapment precede the introduction at trial of evidence of other criminal activity to prove predisposition. Assuming that Batiste is applicable not just to the introduction of evidence but also to statements during voir dire, the outset announcement by Bonanno's counsel provides the requisite clear demonstration here. Nevertheless, we are faced with the difficult question of whether the denial of Dorman's mistrial motion was error, because when made Dorman had not yet clearly evidenced his intent to urge entrapment. In light of the fact that entrapment was ultimately asserted by Dorman (indeed, in opening statement, on the heels of voir dire, Dorman's counsel announced entrapment as his theory of defense) we resolve the issue adversely to him. We are not faced with the problem of a defendant apparently forced to forego his constitutional privilege against self-incrimination, as asserted. The state pointed out in arguing the mistrial motion that Dorman's counsel conducted extensive voir dire concerning the juror's ability to disregard a person's prior record in connection with the issue of present guilt. The record supports the state's assertion and provides a clear indication that it was the intent of Dorman all along to testify; Dorman's voir dire inquires appear to show an attempt to weigh the consequences of revealing his prior record at the outset. Therefore, the prosecutor's "criminal disposition" explanation, prompted by Bonanno's assertion of his intent to plead entrapment, did not ultimately prejudice Dorman. The assignment of error lacks merit as to both defendants. (Dorman and Bonanno Assignments No. 5).
*1291 During cross-examination of Agent Hall, the defense questioned whether Ruff, the person who introduced Agent Hawkins and Dorman, was an informant with the DEA. Hall asserted the informant's privilege, "... the [Government's] privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime." State v. Babbitt, 363 So.2d 690 at 695 (La. 1978). Dissatisfied that cross-examination was curtailed, the defendants assign error.
In support of their position, defendants cite State v. Dick, 362 So.2d 547 (La.1978) and argue that the privilege is not applicable once the identity of the informant is known, as it was here. Technically, the defense is correct, but the curtailment of cross-examination of Agent Hall did not prejudice defendants. They were allowed to explore the character of the relationship between Ruff and the DEA when they later cross-examined Agent Hawkins and learned that he had paid Ruff a $1,000 reward for introducing him to Dorman. The defendants were thus able to achieve their aim, to establish the character of Ruff's relationship with the DEA; thus, the technical error in curtailing cross-examination of Hall does not warrant relief. This assignment lacks merit. (Dorman and Bonanno Assignments No. 11).
By the assignments discussed in the following two paragraphs, the defendants assert that the court erred in admitting into evidence tapes of the telephone conversations with Hawkins and in permitting improper cross-examination of Dorman, based on the tapes' contents. The tapes were the best evidence of their contents and independently admissible. State v. Auzenne, 305 So.2d 507, 508 (La.1975). The fact that the tapes, introduced after Hawkins' testimony, were somewhat cumulative does not bar the introduction of this "best" evidence. See State v. Hawthorne, 345 So.2d 1170 (La. 1977). The "gap" in the May 11th recording which resulted when the microphone fell does not render the taped statements of Dorman inadmissible under R.S. 15:450. Trial testimony adequately establishes the improbability that any substantive conversation followed the microphone's failure. Cf. State v. Marmillion, 339 So.2d 788 (La. 1976), wherein the Court stated: "The law does not require the production of nonexistent portions of the confession . . . ." 339 So.2d at 793. The admission of the tapes was not error.
The claim of improper use of the tapes for cross-examination is likewise without merit. Asked if he had specifically arranged for "Jerry" to come to Florida during a December, 1976 conversation, Dorman hedged: "I don't deny the fact that we had conversations ... But I don't agree with the way you just put it". The state impeached Dorman, using the transcripts of tapes of the December telephone calls. The argument is that Dorman's admission to conversation in December, 1976 foreclosed the state's right to inquire further into the details of these early negotiations. Defendant's equivocal statement was not a distinct admission that he had made a statement contrary to his testimony. By his response Dorman in effect disputed the state's account of the details of the conversation. Thus, under R.S. 15:493 the impeachment use of the contents of the December statements was proper. These assignments are without merit. (Bonanno and Dorman Assignments No. 17; Bonanno Assignments Nos. 21 and 24).
Defendant Dorman sought a mistrial when, on cross-examination, the state inquired about his probation violation in connection with a 1971 heroin conviction. Dorman contends the state thus improperly brought to the jury's attention inadmissible evidence of other crimes.
The court's denial of the mistrial motion was not error. Dorman had attempted to lessen the impact of his earlier conviction by affirmatively testifying on direct examination that he had successfully completed a mandatory conditional release period under the Parole Department's supervision. The state was entitled to put that assertion in proper perspective by showing that after successful completion of that period there was a reversion to less than totally law *1292 abiding conduct. Here, contrary to the defense contention, the simple fact of probation violation does not necessarily indicate commission of another crime. Florida, like Louisiana, permits the imposition of any valid probation condition which would serve a useful rehabilitative purpose;[6] these conditions need not be confined to the commission of crimes or other criminal conduct. (Dorman and Bonanno Assignments No. 19).
Later during the cross-examination Dorman twice made affirmative statements in the course of giving responses that he had never had any cocaine. The state challenged this statement, prompting Dorman to admit that the statement was erroneous, and relate that he had, indeed, possessed cocaine "maybe once or twice" since his 1971 heroin conviction. The defense objected to the line of questioning which elicited these admissions because other crimes evidence was thereby introduced, but the court sanctioned the inquires. The court did not err in its ruling. The defendant's gratuitous assertions made inquiry about his cocaine possession proper. The state was entitled to seek to rebut the defendant's disclaimer. See State v. Barnes, 365 So.2d 1282 (La.1979). (Bonanno and Dorman Assignments No. 23).
During cross-examination of the state's rebuttal witness, Officer Kitchings, the defense asked if he knew about personal contact between informant Ruff and defendant Dorman during the months of August through November (1976). Kitchings responded that he knew of previous contact between Ruff and Dorman but did not know about contact during the months when Ruff was a fugitive (the months prior to his return to Louisiana in late September, 1976). This remark, though found unresponsive to defense's inquiry by the court, does not appear to be a reference to inadmissible other crimes evidence, as defendant Bonanno contends. We thus find it unnecessary to consider whether the remark of the police officer witness would be imputable to the state under the circumstances. (The court's observation that the unresponsive statement resulted from continuous probing on the part of the defense might, however, militate in favor of a determination that there should be no imputation to the state.) The assignment is without merit. (Bonanno Assignment No. 27).
On the basis of clearly improper state closing argument made in response to argument made by the defense, a mistrial was sought but it was denied. The state told the jury that there had been twenty-six recent indictments for distribution of drugs; this information clearly did not relate to the evidence admitted or to the guilt or innocence of the defendants and was thus improper argument. Nevertheless, the article governing the scope of argument, Article 774 of the Code of Criminal Procedure, provides no sanctions for its violation. Thus, only if the mistrial is mandated by the code provisions dealing with mistrial (Code of Criminal Procedure Articles 770, 771 and 775) would the trial court's decision to deny the defense motion be error. The argument of which defendant Bonanno complains did not warrant the granting of a mistrial; the trial court's admonition that the jury was not to consider references to indictments not applicable to the case was sufficient. This assignment is without merit. (Bonanno Assignment No. 33).
In the next group of assignments, the defendants assert the court erred in allowing the state to replay during closing argument the defendant's tape recorded statements and in disallowing a defense motion made during closing argument to place defendant Dorman on the stand. Because the tape recorded statements were properly admitted into evidence at trial, the court did not err in allowing the state to replay the tapes during its closing argument. See State v. Fowlkes, 352 So.2d 208 (La.1977). Leave to present Dorman's additional testimony sought during the defense closing argument was properly refused; discretion to permit the introduction of additional evidence exists only with respect to *1293 evidence proffered prior to argument. Code of Criminal Procedure Article 765(5). These assignments are lacking in merit. (Dorman and Bonanno Assignments Nos. 28 and 29; Bonanno's Assignment No. 30).
The defense contends the court erred in denying them the benefit of the statutory presumption that evidence under the control of a party and not produced by him was not produced because it would not have aided him (R.S. 15:432). The applicability of that presumption is urged in connection with the failure to present the testimony of Ruff, characterized in defense argument as the state's "witness". Even if we were to characterize Ruff's testimony as evidence under the control of the state,[7] so as to render the presumption applicable, that characterization would not avail defendants. The trial court declined to allow Dorman's counsel to read the challenged presumption to the jury during closing argument and denied an oral defense motion seeking inclusion of the statutory presumption in the jury's charge. However, defense counsel was allowed to fully argue the effect of the presumption. Any error resulting did not cause prejudice to the substantial rights of the defendants. C.Cr.P. art. 921. (Dorman and Bonanno's Assignments Nos. 31 and 32).
Defendant Bonanno asserts that the court erred in allowing the state to reopen its case after resting. After the defense rested, the state announced it had no rebuttal to offer. The hour was late, and the court recessed the trial at that time. The next day, when the proceedings resumed, the state moved to reopen its case and present rebuttal. The court permitted this over strenuous defense objection. Under the circumstances present, the court did not abuse the discretion vested in it by Article 765(5) to permit the introduction of additional evidence prior to argument. The defense made no showing that the state acted as it did in order to prejudice defendant; there was no request for a recess or other relief which would have indicated the defense perceived that prejudice resulted when the state misled it into believing that the presentation of evidence had concluded. This assignment lacks merit. (Bonanno Assignment No. 26).
Dorman asserts the court erred in admitting out of court statements made by his co-defendant to Agent Hall. On the night of the commission of the crime Bonanno represented to Hall the cocaine's purity, explained its source and outlined the scope and extent of his operation, then communicated his desire to create a new cocaine outlet in Shreveport. Referring to the expenses of the operation, Bonanno suggested that the agents supply an extra $500 for Dorman, who had complained that he was not being adequately compensated for his "setting up" the transaction. Dorman's counsel objected at trial to Hall's narrative of Bonanno's statements. On this appeal, he argues that Bonanno's unavailability for cross-examination rendered his statements inadmissible, relying on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The reliance on Bruton is misplaced since its exclusion rule applies only to extrajudicial admissions made after the commission of the crime. These statements were unquestionably res gestae. See State v. Joseph, 341 So.2d 861. Bruton clearly does not purport to affect this character of statements. We deem it interesting to note that the statements of Bonanno which Hall recounted relate directly to Dorman in one particular alone, the demand for extra expense money. The record reflects that this demand was established later at trial by the agent's testimony recounting Dorman's own statement. These assignments are without merit. (Dorman Assignments Nos. 10 and 15).
Dorman's claim of excessiveness of sentence is based on arguments urging the comparatively minor nature of his involvement, the disparity between his sentence and that of another principal in the drug transaction, Matheson, and the disparity between his sentence and exposure for the same crime in the federal system (on an equal protection basis).
*1294 Even though the record may only evidence Dorman's involvement in this single transaction, the fact remains that the intended effect of this operation, had it succeeded, was to open a cocaine market in Shreveport. That there was no evidence of an intent for Dorman to further participate in this market would not necessarily lessen his culpability in a scheme which he was aware was intended to create a large new outlet for Bonanno's cocaine trade. The disparity between Dorman's sentence and Matheson's cannot avail him; his sentence is within the statutory limits and Matheson apparently gained no more than the customary advantage by testifying against these defendants. Disparity between his sentence and the sentencing exposure he would have had in a federal proceeding does not evidence excessiveness; defendants charged in state court and federal court are charged under the law of different sovereigns and, thus, the equal protection argument is unavailing. See Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). The assignments of error complaining that Dorman's sentence is excessive are without merit. (Dorman's Assignments Nos. 37, and 38).

Decree
For all of the foregoing reasons, the defendants' convictions are affirmed. The sentence of defendant Dorman is affirmed, but the sentence of defendant Bonanno is vacated and set aside and the case remanded with instructions that the defendant Bonanno be resentenced in accordance with law.
CONVICTIONS AFFIRMED; SENTENCE OF DEFENDANT DORMAN AFFIRMED, SENTENCE OF DEFENDANT BONANNO VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[*] Dixon and Dennis, JJ., would both grant a rehearing.
[1] Agent Hall testified, with respect to the April, 1977 conversation, that Dorman asked him to tell "Jerry" (Agent Hawkins' undercover name) that he, Dorman, called and requested that "Jerry" be asked to return his call if he was still interested in the business transaction they had previously discussed. Agent Hawkins testified with respect to the May telephone conversations that he had with Dorman. In relating the contents of the various calls, Hawkins testified that Dorman expressed his desire to "get some business together", told that Dorman related arrangements he had made to have a pound of cocaine to bring to Shreveport to sell, and recounted Dorman's representations of the good quality of the cocaine. Hawkins testified that Dorman expressed a wish to come to Shreveport, on the day of the May 9, 1977 telephone conversation but, told by "Jerry" that he would be leaving Shreveport, agreed to call again the next afternoon, after "Jerry's" return, to make arrangements to bring the drugs to Shreveport. Testimony about further telephone conversations revealed that upon hearing "Jerry" express hesitancy about the transaction when told of the probability of an increase in the price earlier quoted, Dorman urged that any decision regarding the purchase he deferred until he ("Jerry") could assure himself of the quality of the product, which Dorman guaranteed would be so satisfactory that "Jerry" would be willing to pay the increased price. Dorman also asked "Jerry" to act as if the dealing between them had been going on for an extended period, since the people who would be accompanying Dorman to Shreveport had that impression.
[2] State v. Sneed, supra, quoting from the Official Revision Comment (c)(2) to Code of Criminal Procedure Article 769, notes: "The defendant cannot properly prepare to meet the issue unless he is apprised that the state intends to use the confession." Sneed continues: "The purpose is not simply to give the defendant notice of a confession or inculpatory statements, but also of the state's intent to use it at the trial.... The defendant's trial strategy (such as a decision to testify or not) and the preparation of his defense (such as securing witnesses to attempt to prove involuntariness or to explain an involuntary statement) are affected by the state's notice (or not) of its intent to use a given confession or statement." (Citation omitted) 316 So.2d at 376.
[3] Were we required to make such a determination in this case, we might view the circumstances as militating in favor of a determination that no serious prejudice followed the failure to apprise the defendant. The impact of the statements may be clear, but that prejudice necessarily resulted from failure to notify the defendant of their existence and the state's intent to use them is not. It seems likely, from a review of the record, that Dorman would have nonetheless persisted in his entrapment defense. From the time of his arrest, Dorman knew that "Jerry", with whom he had had numerous conversations, was a law enforcement agent who had "made" the case against him and so would likely be a principal witness at his trial.
[4] Ordinarily, motions for discovery and for bills of particulars are filed in the record and served on the district attorney, who then answers and files his answer. If the defense is dissatisfied with the state's response, it challenges the sufficiency of the responses by provoking a contradictory hearing.
[5] Code of Criminal Procedure Article 729.5 provides:

"A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal as may be appropriate.
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of Court."
[6] See Hines v. State, 358 So.2d 183 at 185 (Fla.1978); compare La.C.Cr.P. aart. 895.
[7] Presumably, Ruff could have been subpoenaed by the defense.