499 So.2d 295 (1986)
STATE of Louisiana
v.
William OLIVER.
No. KA 86 0497.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
Rehearing Denied January 12, 1987.
*296 John J. Erny, Jr., Asst. Dist. Atty., Thibodaux, for the State of La.
Roy A. Jefferson, Jr., Thibodaux, for William Oliver.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
William Oliver was charged by bill of information with possession of marijuana in excess of one hundred pounds, a violation of LSA-R.S. 40:966 E(1). He pled not guilty and, after trial by jury, was found guilty as charged. He was sentenced to six years at hard labor (the first five years to be served without benefit of parole, probation, or suspension of sentence) and a fine of $25,000.00. On appeal defendant alleges four assignments of error, as follows:
1. The trial court erred in denying defendant's motion for a new trial.
2. The trial court erred in denying the defendant's motion for post-verdict judgment of acquittal.
3. The trial court erred by allowing into evidence tape recorded statements of the defendant which were, in large part, unintelligible.
4. The trial court imposed an excessive sentence.

*297 FACTS
On Monday, September 24, 1984, State Police Sgt. Richard Hazelwood called Detective Allen Wall of the Lafourche Parish Sheriff's Office and informed him that some Jamaicans staying at the Canal Inn Motel in Thibodaux, Louisiana, were believed to possess a large quantity of marijuana, perhaps in excess of 500 pounds. It was determined that the Jamaican suspects were staying in Room 19 of the Canal Inn Motel. Lafourche Parish Sheriff's deputies immediately organized a surveillance of Room 19. Two deputies, Colleen Conley and Michael Martin, observed the defendant leave Room 19 and proceed to walk down the street at approximately 1:15 p.m. At approximately 3:00 p.m. that afternoon, a group of four white males in two cars drove into the Canal Inn Motel parking lot and eventually went to Room 19. The white males were armed, and some of them had their guns drawn at the door. The white males entered the room and began loading garbage bags containing marijuana into their cars. While this occurred, some of the Jamaican suspects fled the scene in a van. When law enforcement officers on the scene decided to move in, a gun battle ensued which lasted at least fifteen minutes. Eventually, the white male suspects surrendered and were arrested. The record is unclear whether or not any of the Jamaican suspects were also arrested at the scene at this time.
When Room 19 was secured, a large amount of marijuana was observed in garbage bags and scattered across the floor. Also in the room was a suitcase belonging to the defendant, William Oliver.[1] The defendant's suitcase contained numerous items of identification, including his passport, seaman card, address book, record book, vaccination card, immigration card, airline tickets and some other documents. An arrest warrant was later issued for the defendant. He was arrested in a hotel in LaPlace, Louisiana, late Wednesday night, September 26, 1984.

DISCUSSION
After the defendant was arrested, he gave two taped statements early Thursday morning, September 27th. The quality of these tapes is poor, and this problem is further compounded by the fact that the defendant speaks with a heavy West Indian accent. Nevertheless, these two tapes were played for the jury at the trial. A typed transcript of the second statement was made, but the first statement was not transcribed. Since the first taped statement was not transcribed, Detective Wall was allowed to testify as to the contents of this statement. When the second statement was played to the jury, they were allowed to simultaneously read copies of the transcribed statement.
In these statements, the defendant related that he had previously been staying in Room 11. However, since he was going to Texas for a few days with a Jamaican companion named Charlie, likewise a suspect in this matter, another Jamaican named Earl offered to keep the defendant's suitcase with him in Room 19. This arrangement would save the defendant the cost of Room 11 merely to store his suitcase during his trip to Texas.
Over the weekend, the defendant traveled to Houston and Corpus Christi. In Corpus Christi, he met his old friend, Mike, also a Jamaican. Eventually, Charlie, Mike, and the defendant returned to Louisiana together. They arrived in Thibodaux at approximately 8:00 p.m., on Sunday, September 23. After eating dinner, Earl, Charlie, Mike, and the defendant drove to the Mississippi River. At some point along the river bank, they stole a large quantity of marijuana from two white males in a boat. They hid the marijuana somewhere on the bank and fled back to Thibodaux, since they were being chased by several white males.
According to the recorded statements, when the defendant awoke Monday morning, he saw that the others had brought the marijuana into the motel room during the *298 night. The defendant stated that his companions were joking about the theft of the marijuana as they were packaging it in garbage bags. The defendant stated that he left the room and went for a walk in the town. Eventually, the defendant heard gunshots, became frightened, and hid inside a garage for several hours. The defendant then called a taxi and left town. Outside of Thibodaux, the defendant exited the taxi and began walking toward the Mississippi River, where he was picked up by a stranger who gave him a ride to LaPlace. This stranger also checked the defendant into a LaPlace hotel. The defendant stated that he was arrested the next day in LaPlace.
In his testimony at trial, the defendant's story is somewhat different from the story related in the two taped statements. He testified that he was at the river with his companions when they observed two white males in a boat. However, he testified that he returned to the Canal Inn with Mike before the others stole the marijuana from the white males at the Mississippi River. In his trial testimony, the defendant stated that he learned about the theft of the marijuana when he awoke Monday morning and saw it in the living room. He testified that Charlie, Earl, and another man were smoking marijuana and packaging it in plastic garbage bags. He learned that his companions had stolen the marijuana because they were making jokes about how the white males did not know what they were missing. The defendant testified that he took his suitcase, left the room, and walked down the street. The defendant testified that he was talking to a stranger in town when gunshots rang out. He testified that he dropped his suitcase in the street and fled, eventually ending up in LaPlace.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, the defendant contends that the trial court erred in allowing the two tape recorded statements to be played in the presence of the jury. He also contends that it was error to admit into evidence the typed transcript of the second statement.[2] The defendant argues that, because both of the tapes contained many blank and incomplete sections, the introduction into evidence of these statements violates the best evidence rule and the rule concerning the admissibility of confessions, admissions, or declarations.
The best evidence of a tape recorded statement is the unaltered tape. State v. Auzenne, 305 So.2d 507 (La.1974). In the instant case, both of the tape recorded statements were played in their entirety. Therefore, the best evidence rule was not violated.
LSA-R.S. 15:450 provides:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
In State v. Marmillion, 339 So.2d 788 (La.1976), the prosecution introduced the testimony of a police officer relating to an inculpatory statement made by the defendant. The statement had not been tape recorded. Defense counsel objected, arguing that the police officer had admitted that he could not recall verbatim the defendant's complete statement. Defense counsel contended that the defendant's entire statement would produce exculpatory or explanatory evidence. While the supreme court noted LSA-R.S. 15:450, they also stated:
Nevertheless, in the absence of proof to the contrary, the fact that the purported statement of the accused as testified to by the investigating officer does not consist of a verbatim reiteration of the conversation between them, due to the witness' inability to recall or other valid explanation, the rights of the accused under Section 450 are not violated. The law does not require the production of *299 nonexistent portions of the confession or portions which cannot be recalled. (Citations omitted).
339 So.2d at 793.
In the instant case, it is true that the taped statements were of poor quality. Because of the defendant's heavy accent, some of his answers sound jumbled. Blank spaces on the transcribed statement result from an inability to understand the defendant's answers, or from his silence. However, the best evidence rule was met when both of the taped statements were played in their entirety to the jury. Because of the poor quality of the tapes, Detective Wall was allowed to testify as to his recollection of the first statement; and the jury was allowed to read a typed copy of the second statement. Since the law does not require the production of non-existent portions of a confession or portions which cannot be recalled, we conclude that the trial court did not err in allowing into evidence the taped statements and the typed transcript. See State v. Marmillion, supra; State v. Bonanno, 373 So.2d 1284 (La. 1979).
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In these assignments of error, the defendant contends that the trial court erred in denying his motion for new trial and motion for post verdict judgment of acquittal. The defendant argues that the verdict was contrary to the law and the evidence because the prosecution failed to prove the necessary elements of the offense, i.e., the prosecution failed to prove that the defendant possessed and/or controlled the marijuana. The defendant argues that, even when viewed in the light most favorable to the prosecution, the evidence does not reasonably support his conviction.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
The jurisprudence has not established precise guidelines as to what constitutes "possession" of drugs under the controlled dangerous substances act. Actual physical possession is, of course, sufficient; and various cases hold that there may be "constructive possession" when the material is not in the physical possession of a person, but is under his dominion and control. State v. Trahan, 425 So.2d 1222, 1226 (La. 1983). In State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971), the Louisiana Supreme Court stated:
A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control of it. (Citations omitted).
Proximity to a drug or association with a possessor may establish a prima facie case of drug possession when colored by other evidence. State v. Johnson, 404 So.2d 239, 245 (La.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). However, mere association or proximity, without more, is insufficient. See State v. Cann, 319 So.2d 396 (La.1975). The determination of whether there is "possession" sufficient to convict depends upon the particular facts of each case. See State v. Cann, supra.
In the instant case, the prosecution proved that approximately 267 pounds of marijuana was found in Room 19 of the Canal Inn Motel on Monday, September 27, 1984. As soon as the shooting had stopped and the scene was secured, law enforcement officers entered the room. They observed the large quantity of marijuana scattered around the living room. They *300 also observed the defendant's suitcase. The defendant was seen by the surveillance team leaving the room. The defendant himself admitted that he was in Room 19 the night before. Although the defendant stated that he left the room in the morning, deputies Martin and Conley both testified that they observed the defendant leaving the room at approximately 1:15 p.m.
The defendant's trial testimony and his two taped statements contain some critical conflicts. In his recorded statements, he seems to indicate that he left his suitcase in the room when he went for a walk that morning. However, at trial, he testified that he took the suitcase with him and dropped it in the street when the shooting began. His taped statements also indicate that he was present at the river bank when his friends stole the marijuana from the two white males in the boat. At trial, however, he testified that he was present at the river bank, but that he and Mike went back to the Canal Inn while Charles and Earl remained behind. Therefore, according to his trial testimony, he was not present when his companions stole the marijuana at the river bank.
In this case, the prosecution introduced evidence that (1) a large quantity of marijuana was found in Room 19 of the Canal Inn Motel; (2) the defendant had spent the night in Room 19; (3) the defendant knew that the marijuana was present in the room; (4) the defendant knew the other Jamaican suspects in the room; (5) the defendant had been present when his companions stole the marijuana; (6) although the defendant was not present in the room when the marijuana was seized, his suitcase was present in the room indicating that he intended to return.
In this case, the jury had for its consideration the physical evidence, the defendant's trial testimony, the defendant's tape recorded statements, and the testimony of the other witnesses. The defendant's testimony suggested that he was not present when the marijuana was stolen, and that he was leaving Room 19 because he did not wish to be associated with his companions or the marijuana. Obviously, the guilty verdict returned in this case indicates that the jury rejected the defendant's version of events offered at trial. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir. 1984). When there is conflicting testimony as to a factual matter, the question of credibility of witnesses is within the sound discretion of the trier of fact. State v. Jacobs, 435 So.2d 1014 (La.App. 1st Cir. 1983).
The jury concluded that the defendant possessed the marijuana, either actually or constructively. The defendant would have us believe that he was merely in the wrong place at the wrong time and that, once he discovered the presence of the marijuana in Room 19, he left and did not return. However, the jury has made its decision. This court will not reweigh the credibility of witnesses under the Jackson v. Virginia standard.[3]State v. Jacobs, supra.
After a careful review of the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved the essential elements of the crime beyond a reasonable doubt.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence.
La.C.Cr.P. art. 894.1 requires the trial court to weigh both aggravating and mitigating circumstances in determining whether or not to impose incarceration. While the trial court is not required to *301 articulate every such circumstance in imposing sentence, the record must reveal adequate consideration of the guidelines enumerated in Article 894.1. State v. Banks, 457 So.2d 1264 (La.App. 1st Cir. 1984).
Reviewing the Article 894.1 guidelines, the sentencing record reflects that the trial court found both aggravating and mitigating circumstances in this case. The record of sentencing reflects that the trial court considered the presentence investigation in great detail. The trial court noted that the defendant had no prior criminal record in the United States or in his native country. The trial court also noted that the defendant was not present in Room 19 when the shooting incident occurred. However, the trial court noted that this offense required the imposition of a minimum sentence and, therefore, suspension or probation was not possible.
The choice of sentences within the statutorily prescribed range lies within the sound discretion of the trial court. This discretion is subject only to the constitutional limitations on excessive sentences and should not be disturbed absent manifest abuse. State v. Burnette, 419 So.2d 835 (La.1982).
In the instant case, the defendant was exposed to a maximum sentence of ten years at hard labor and a maximum fine of $50,000.00. Additionally, LSA-R.S. 40:966 F(1) provided that the defendant must serve at least five years at hard labor without parole, probation, or suspension of sentence. Therefore, since the defendant received a sentence of six years at hard labor, including the five year minimum which was imposed without benefit of parole, probation, or suspension, and the minimum fine of $25,000.00, we note that the trial court actually imposed a sentence in the lower range of the sentencing scale. Therefore, we find that the trial court did not abuse its discretion in imposing this sentence.
For the foregoing reasons the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant, William Oliver, is from St. Vincent, West Indies.
[2] In his brief, however, the defendant does not contend that the trial court erred in allowing Detective Wall to testify as to his recollection of the first statement.
[3] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).