409 So.2d 535 (1981)
STATE of Louisiana
v.
Richard Glen NAAS.
No. 80-KA-2446.
Supreme Court of Louisiana.
June 22, 1981.
Dissenting Opinion July 21, 1981.
On Rehearing December 14, 1981.
Rehearing Denied February 19, 1982.
*537 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, *538 Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
James D. Sparks, Jr., Monroe, for defendant-appellant.
CALOGERO, Justice.
Richard Glen Naas was charged by bill of indictment on March 30, 1978, with second degree murder, a violation of R.S. 14:30.1. Trial was held before a jury of twelve and a conviction was returned by an eleven to one vote. The court imposed a sentence of life imprisonment at hard labor without probation or suspension of sentence, and without parole eligibility for forty years. Defendant appeals his conviction to this Court on the basis of numerous assignments of error.
At trial, the following facts were adduced. In the early morning hours of March 8, 1978, officers of the Monroe Police Department were called by the manager of the local Ramada Inn to investigate a possible homicide at that motel. Upon entering room 428, the officers discovered the body of the victim, John J. Mirambell, Jr., submerged in the bathtub. The victim's hands were tied behind his back and, according to the pathologist's report, the victim had received multiple cuts, bruises, and lacerations, along with two non-fatal stab wounds to the back and a fatal gunshot wound to the left temple.
The victim was a resident of the New Orleans area and had been in Monroe on business. At the time of his death, he was engaged to be married to Ms. Amanda Keller, also of the New Orleans area. Ms. Keller had previously dated the defendant, Richard Naas, but had broken off her relationship with him. On March 4, 1978, several days before the murder, Ms. Keller announced to the defendant her plans to marry Mirambell.
The state's case against defendant consisted of the following: the testimony of several witnesses that the defendant several days after the homicide had a black eye, suggestive of the possibility that shortly before, he was involved in some sort of fracas, or struggle; a money clip found in possession of the defendant which several witnesses said was similar to one owned by the victim; the testimony of one Mary Kelly, a waitress at Monroe's Kokomo Restaurant, who identified the defendant as having been present in that establishment on the evening prior to the murder;[1] the testimony of Sylvester Grant, a cellmate of the defendant following defendant's arrest for the instant crime, that the defendant admitted committing the Ramada Inn murder; the testimony of the victim's mother, sister, and receptionist that they had received telephone calls shortly before the murder from an unknown male inquiring concerning the whereabouts of the victim; and the testimony of Amanda Keller's roommate that she had received a call from the defendant on the night of the murder which in her opinion sounded as if it was being made long distance.
Because we find merit in defendant's assignment of error number 40-A, pertaining to the Motion for New Trial, and reverse on that grounds, discussion of defendant's other assignments of error is unnecessary.
In connection with defendant's Motion for New Trial, a post-trial hearing was conducted at which pertinent testimony from the following witnesses was given: Gene Juergens, who was a co-worker of defendant, stated that he had informed Detective Cummings upon being asked by the officer to inspect a money clip seized from the defendant's apartment that the clip appeared to be the one belonging to the defendant;[2] Paul Scoriels, an acquaintance *539 of defendant, testified that he had seen defendant at the Jefferson Parish Courthouse on Monday, March 6, 1977, one day before the murder, and had at that time observed defendant to be sporting a mustache; [3] Kenneth Walker and Johnny Jackson, both former cellmates of Sylvester Grant and of defendant, testified that they heard Grant brag repeatedly that he himself had committed the homicide at the Ramada Inn; Connie Naas, defendant's ex-wife, stated that the money clip taken by police from the defendant's apartment was a gift to defendant from his employer in New Orleans some years prior to the homicide; Trudy Defrene, a waitress at the Round Table Lounge in Gretna, Louisiana, testified that she had told police a week after the murder that she saw defendant in the Round Table between 8:30 and 10:00 p. m. on Tuesday, March 7, 1978.[4]
The law pertaining to the granting of Motions for New Trial is set out in C.Cr.P. art. 851, which provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
Defendant's motion is grounded on C.Cr.P. art. 851(3). It is urged that the testimony offered post-trial constitutes new and material evidence, which was not discovered before or during trial, defendant's diligence notwithstanding, and which would probably have changed the verdict. The motion is further based on C.Cr.P. art. 851(4), the defendant's position being that a newly discovered error or defect is present by reason of the state's knowledge of and failure to disclose the statements of Gene Jurgens and Trudy Dufrene, which statements are arguably exculpatory in nature.[5]
While defendant's claims as they relate to C.Cr.P. art. 851(4) and to the Brady motions *540 are not entirely without merit, the state's failure to disclose the arguably exculpatory statements was not "prejudicial error" as would be required by the statute. Furthermore, the new evidence offered in the form of Paul Scoriels' testimony that defendant was in the Jefferson Parish Courthouse on March 6, 1978, while material and substantial, cannot conclusively be said to "probably have changed the verdict or judgment of guilty if introduced at trial." C.Cr.P. art. 851(3). However, because in our view the single most damaging piece of evidence against defendant was Sylvester Grant's account of the defendant's admission of guilt, we hold that the impeaching testimonies of Kenneth Walker and Johnny Jackson are evidence which, if given at trial, would have cast serious doubt upon the credibility of Grant and would probably have changed the verdict or judgment of guilty.[6] C.Cr.P. art. 851(3).
We need not find that Grant probably committed the murder, rather than defendant. Rather, it suffices that these accounts of Grant's own confessions strongly impeach Grant's testimony.
Our holding with regard to newly discovered evidence requires that such evidence "... notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during trial." C.Cr.P. art. 851(3). Discussion of the defendant's reasonable diligence requires mention of another of his arguments to this Court, namely, the one dealing with the pre-trial Prayer for Oyer.[7]
The defense, in preparation for trial, made a Motion for Prayer for Oyer toward the end of April, 1978. The motion was granted by the trial judge under C.Cr.P. art. 716B[8] in response to a prayer asking "... the State to furnish (defendant) copies of all oral, taped and/or written confessions, statements, and/or admissions allegedly made by the Defendant either before or after his arrest for the alleged offense for which he is charged herein." On April 26, 1978, the state answered the prayer with a transcript of the recording of a statement made by the defendant to the police.[9] Sylvester Grant was placed in the Ouachita Parish Jail with defendant on May 25, 1978, and approached the police with his account of defendant's confessions on June 2, 1978. At that time, Grant's statement was recorded and transcribed as was a similar statement made by him to police several days later, on June 5th.[10] Testimony of witnesses at trial indicate that the District Attorney was made aware of the content of both of Grant's statements within a week of their having been made to the police. The defense was not informed of the existence of this purported confession made by defendant to Grant until February 5, 1979, the very first day of trial, when the state in accordance with C.Cr.P. art. 768[11] related its intention to use the statement at trial.
C.Cr.P. art. 729.3 provides:

*541 "If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection."
In the defendant's argument relative to these assignments, it is correctly stated that the prosecution neglected its continuing duty to disclose, as set out in C.Cr.P. art. 729.3, by failing to apprise the defendant during the eight months prior to trial of the existence of Sylvester Grant's account of the defendant's confession. It is only because defendant did not object on these specific grounds to the introduction of Grant's statement at trial that we do not reverse the conviction on the basis of this egregious omission by the state.[12]
It is one thing to say that defendant cannot complain of the introduction of Grant's damning testimony because defendant did not object on the appropriate grounds. It is entirely another, however, for this Court to find that defendant's lack of diligence caused him not to discover before conclusion of trial the witnesses who would later impeach Grant, in a situation where the state has withheld whether intentionally or negligently, until the first day of trial, information which for eight months they had a duty to disclose.[13] On the contrary, we find that defendant's late discovery of the evidence was not the result of any lack of diligence on his part.
In summary, Kenneth Walker's and Johnny Jackson's recitals that Grant had confessed his own commission of the Mirambell murder was discovered after the verdict of guilty; that late discovery came about notwithstanding the exercise of reasonable diligence on the part of defendant; and had such evidence been introduced at the trial it would probably have changed the verdict of guilty. Therefore, defendant is entitled to a new trial. C.Cr.P. art. 851.

Decree
For these reasons, we hold that the trial court should have granted defendant's Motion for New Trial. Accordingly, the conviction is reversed and the case is remanded for a new trial.
REVERSED; REMANDED; NEW TRIAL ORDERED.
DENNIS, J., dissents with reasons.
WATSON, J., dissents.
DENNIS, Justice, dissenting.
I respectfully dissent. Defendant neither briefed nor arguedand therefore has abandonedthe assignment of error the *542 majority determines to contain reversible merit. The state in brief provides the likely reason for the defense omission: evidently the two witnesses who would be called to impeach the state's principal witness have since recanted their testimony given at the hearing on the motion for a new trial. We should not reverse the trial court ruling on an issue the defense itself has implicitly conceded to be without substance.

ON REHEARING
DIXON, Chief Justice.
We granted a rehearing in this case to reconsider our decision that the trial court should have granted defendant's motion for a new trial based on the testimony of two prisoners at the hearing of the motion which impeached the testimony of the state's key witness.
Defendant, Richard Glen Naas, was charged by bill of indictment with second degree murder in violation of R.S. 14:30.1. The jury returned a verdict of guilty and Naas was sentenced to life imprisonment at hard labor without probation or suspension of sentence, and without parole eligibility for forty years.
We adopt the facts as recited in our original opinion:
"... In the early morning hours of March 8, 1978, officers of the Monroe Police Department were called by the manager of the local Ramada Inn to investigate a possible homicide at that motel. Upon entering room 428, the officers discovered the body of the victim, John J. Mirambell, Jr., submerged in the bathtub. The victim's hands were tied behind his back and, according to the pathologist's report, the victim had multiple cuts, bruises, and lacerations, along with two non-fatal stab wounds to the back and a fatal gunshot wound to the left temple.
The victim was a resident of the New Orleans area and had been in Monroe on business. At the time of his death, he was engaged to be married to Ms. Amanda Keller, also of the New Orleans area. Ms. Keller had previously dated the defendant, Richard Naas, but had broken off her relationship with him. On March 4, 1978, several days before the murder, Ms. Keller announced to the defendant her plans to marry Mirambell.
The state's case against defendant consisted of the following: the testimony of several witnesses that the defendant several days after the homicide had a black eye, suggestive of the possibility that shortly before, he was involved in some sort of fracas, or struggle; a money clip found in possession of the defendant which several witnesses said was similar to one owned by the victim; the testimony of one Mary Kelly, a waitress at Monroe's Kokomo Restaurant, who identified the defendant as having been present in that establishment on the evening prior to the murder; the testimony of Sylvester Grant, a cellmate of the defendant following defendant's arrest for the instant crime, that the defendant admitted committing the Ramada Inn murder; the testimony of the victim's mother, sister, and receptionist that they had received telephone calls shortly before the murder from an unknown male inquiring concerning the whereabouts of the victim; and the testimony of Amanda Keller's roommate that she had received a call from the defendant on the night of the murder which in her opinion sounded as if it was being made long distance."
A hearing was held in connection with defendant's motion for a new trial, at which the following testimony was given:
"... Gene Juergens, who was a co-worker of defendant, stated that he had informed Detective Cummings upon being asked by the officer to inspect a money clip seized from the defendant's apartment that the clip appeared to be the one belonging to the defendant; Paul Scoriels, an acquaintance of defendant, testified that he had seen defendant at the Jefferson Parish Courthouse on Monday, March 6, 1977, one day before the murder, and had at that time observed defendant to be sporting a mustache; Kenneth Walker and Johnny Jackson, both *543 former cellmates of Sylvester Grant and of defendant, testified that they heard Grant brag repeatedly that he himself had committed the homicide at the Ramada Inn; Connie Naas, defendant's ex-wife, stated that the money clip taken by police from the defendant's apartment was a gift to defendant from his employer in New Orleans some years prior to the homicide; Trudy Dufrene, a waitress at the Round Table Lounge in Gretna, Louisiana, testified that she had told police a week after the murder that she saw defendant in the Round Table between 8:30 and 10:00 p. m. on Tuesday, March 7, 1978."

Assignments of Error Nos. 40 and 40A
By these assignments, defendant argues that the testimony of Kenneth Walker and Johnny Jackson given at the hearing on the motion for a new trial constitutes new and material evidence sufficient to justify a new trial under C.Cr.P. 851(3). In our original opinion, we agreed with defendant and held that the impeachment testimony of Walker and Jackson would have cast serious doubt on the credibility of the state's key witness, Sylvester Grant, and would have probably changed the verdict.
Upon a careful reexamination of the testimony adduced at the hearing on the motion for a new trial, we are of the opinion that our initial determination to order a new trial under C.Cr.P. 851(3) was erroneous. The test to be utilized is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Provost, 352 So.2d 661 (La.1977). In view of the questionable nature of "jailbird" testimony, we are of the belief that the trial court's denial of defendant's motion should not have been disturbed. Our original decision rested solely on the testimony of two cellmates, Walker and Jackson. We now believe that too much credence was given to and weight placed on their sketchy testimony. The substance of their testimony offered at the hearing was merely that Grant told them he committed a murder at some Ramada Inn. They were unable to provide any details or specific facts such as Grant's motive for the crime. Walker testified vaguely that Grant said somebody "was messing with his old lady or wife or something, ... or cursed her or something." We hold that defendant failed to show that this testimony is so material that it ought to produce a different result.[1]

Assignments of Error Nos. 2A, 3, 34, 37, 38, 39, 40, 41, 42, 44, 50, 51, 52 and 53
By these assignments, defendant urges that the state's failure to furnish notice of the existence and substance of oral inculpatory statements constitutes reversible error.[2] Defendant insists that the *544 state's refusal to comply with discovery amounts to a prejudicial error or defect within the meaning of C.Cr.P. 851(4).[3] It is undisputed that the state failed to supply Naas with the name of its key witness, Sylvester Grant, despite a discovery order directed at such information, until the morning of trial. Aside from not disclosing Grant's name, the defense also contends that the state failed to inform it that two individuals, Trudy Dufrene and A. J. Doming, who were interviewed during the police investigation of the murder, had told police that they saw defendant in the New Orleans area on the night of the crime. This contention is partially erroneous. In the state's answer to defendant's motion for a bill of particulars, the state revealed the name and address of Trudy Dufrene and reported that Dufrene said she might have seen Naas on the night of the crime. Had defendant followed up on this information, the testimony of Dufrene, and probably that of her husband, Doming, would have been available at trial. Thus, this evidence does not satisfy the test of C.Cr.P. 851(4).
In conjunction with our original holding, we noted that the state violated its continuing duty to disclose, as required by C.Cr.P. 729.3, by omitting to inform the defense of Naas' inculpatory statements to Grant. We did not reverse on this ground, however, finding that no objection to the introduction of Grant's testimony on the ground that the prosecution ignored the mandate of C.Cr.P. 729.3 was raised at trial. By not objecting, the defense eliminated the possibility of imposition of the sanctions enumerated in C.Cr.P. 729.5 as a means to rectify any inequity created by the state's noncompliance. We affirm our holding that defendant cannot challenge the state's noncompliance because he failed to object. See State v. Bonanno, 373 So.2d 1284 (La.1979).
We now turn to other assignments raised by defendant in brief.

Assignment of Error No. 1
By this assignment, the defense argues that C.Cr.P. 292 is unconstitutional in that it dispenses with the necessity of a preliminary hearing where the accused has been indicted. This court has held that C.Cr.P. 292 does not violate the due process requirement of the federal Constitution. See State v. Howard, 325 So.2d 812 (La. 1976). Nor is C.Cr.P. 292 violative of the Louisiana Constitution. See La.Const. art. 1 § 14 (1974).
This assignment lacks merit.

Assignment of Error No. 2
By this assignment, defendant urges that the state's failure to fully answer a bill of particulars constitutes reversible error. The purpose of a bill of particulars is to provide an accused with sufficient information as to the nature and cause of the offense with which he is charged. State v. Atkins, 360 So.2d 1341 (La.1978), cert. denied 441 U.S. 927, reh. denied 442 U.S. 935; C.Cr.P. 484. Adequate information of the nature and cause of the accusation against defendant was supplied by the state.
This assignment lacks merit.

Assignment of Error No. 5
By this assignment, defendant asserts that the trial judge erred in denying his motion for a change of venue on the ground that widespread publicity precluded *545 an impartial trial in Ouachita Parish. In order to be entitled to a change of venue, the defendant must prove more than a mere knowledge by the public of facts surrounding the offense. State v. Baldwin, 388 So.2d 679 (La.1980). The sole evidence offered by Naas at the hearing on this motion consisted of the testimony of a special investigator that there had been some media coverage of the murder and three newspaper clippings which reported the crime on the day of its occurrence and defendant's arrest. In view of the sparse showing of publicity, the trial court's ruling that defendant would not be prejudiced was not error.
This assignment lacks merit.

Assignment of Error No. 4
By this assignment, defendant urges that the trial court erred in denying his motion to produce prosecution witnesses and witnesses beneficial to a defense. Defendant argues that he informed police officers of his whereabouts on the night of the crime and gave the names of persons who could verify his whereabouts and, therefore, he was entitled to the names of state witnesses under C.Cr.P. 727(B). The trial court ruled that article 727 requires that the district attorney make written demand upon the defendant before the defendant is entitled to reciprocal discovery. The ruling is correct. No formal discovery had been initiated by the state at the time defendant volunteered information concerning his whereabouts. The police were merely investigating the murder and had not as yet zeroed in on the defendant.
This assignment lacks merit.

Assignment of Error No. 6
By this assignment, defendant asserts that the trial court erred in not holding a hearing on his motion to suppress a money clip and photographs taken of the crime scene. This assignment is without merit. The record indicates that a hearing was held on the motion at which it was shown that the money clip was taken from defendant's apartment pursuant to a consent to search form. The trial court's finding that C.Cr.P. 703 only applies to the suppression of evidence obtained by an unconstitutional search (and not to challenges of relevancy or prejudicial effect) was correct. Thus, defendant's objection to the photographs on these grounds was premature and properly raised at the trial when the state attempted to introduce them.
This assignment lacks merit.

Assignments of Error Nos. 8 and 28
Defendant argues that the state's failure to produce physical evidence constitutes error. The record is devoid of any objection by the defense urging that the state had failed to comply with the discovery request, nor was any objection raised at the trial to the evidence. A failure to object once the evidence is offered constitutes a waiver of the objection. State v. Roussel, 381 So.2d 796 (La.1980).
These assignments lack merit.

Assignment of Error No. 7
By this assignment, defendant urges that the state's failure to comply with his motion to produce witnesses beneficial to the defense constitutes reversible error. The defense requested the production of the name and address of a witness who heard a violent argument in the victim's room earlier in the evening of the crime. The court ordered the state to respond to the motion within fourteen days and the defense was instructed that it could contest the response if it was not satisfactory. The state answered that it had no knowledge of a witness who heard an argument earlier in the evening, but that it did know of a witness who would testify at trial in regard to a violent argument in the victim's room near the time of the murder. Defendant did not contest this reply. Moise Seligman testified at trial that he was staying at the Ramada Inn in the room adjoining that of the decedent on the night of the murder. He stated that he heard an argument and fighting. After the arguing ceased, he heard the shower. Much later, he awoke and found his room flooded with water and blood.
*546 No provision in the discovery articles mandates that the state furnish the defense with the names of its witnesses, especially when their testimony does not bear directly on guilt or innocence. Further, this testimony was not exculpatory.
This assignment lacks merit.

Assignments of Error Nos. 10 and 11
By these assignments, defendant objects to the qualification of Officer Tullos as an expert in fingerprint identification on the ground that he was not properly qualified because a certificate from the F.B.I. Fingerprint School was not filed into the record. The defense stipulated that Officer Tullos could testify as an expert provided a copy of his certificate was filed into the record prior to the end of trial. It appears that a certificate was not filed. However, Officer Tullos was permitted to testify as an expert on the basis of the parties' stipulation. Any error in this regard is harmless. The record indicates that Officer Tullos had attended the F.B.I. Fingerprint School and was certified. He had over seven years experience and had qualified as a fingerprint expert in previous trials.
Assignment No. 11 challenges a question posed to Officer Tullos as an expert. Since we find that defendant's objection to Officer Tullos' qualification as an expert is unfounded, this question was not beyond the scope of his expertise.
These assignments lack merit.

Assignment of Error No. 12
By this assignment, defendant contends that pictures of the body of the victim which were introduced at trial were inflammatory and of no evidentiary nor probative value. There is no merit to this assignment. The photographs were introduced by the state to show the scene of the offense and to prove the corpus delicti. They may well be described as gruesome, but are relevant. Defendant has not demonstrated that the nature of the pictures prejudiced his case.

Assignments of Error Nos. 13 and 14
Defendant objects to the introduction of a drawing of the motel room where the homicide occurred on the ground that Officer Tullos was not qualified to testify about the drawing because he had not prepared it and a proper foundation was not laid. We agree with the trial court's decision to allow admission of the drawing as the best representation of the murder scene.
These assignments lack merit.

Assignment of Error No. 15
Defendant contends that certain questions posed to Dr. Thomas F. Gilchrist, an expert in pathology who performed an autopsy on the victim, were improper. Dr. Gilchrist testified about the cause of death and was then asked whether the multiple injuries sustained by the deceased were normally associated with any particular type of case. The doctor replied that in his experience, the patterns presented in this case "have usually been associated with some sort of sexual conflict or some sort of sexual motive." Defendant argues that this testimony goes beyond the scope of a pathologist's expertise and is improper opinion testimony.
R.S. 15:464 provides:
"On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony."
Dr. Gilchrist testified what his experience had been as to the usual motive in cases of this sort. Thus, due to his experience, he was qualified to answer the questions.
This assignment lacks merit.

Assignments of Error Nos. 16, 17, 18, 19, 36A
By these assignments, defendant contends that certain tangible items introduced into evidence were not mentioned by the state in its opening statement, that a proper foundation was not laid, and that testimony about these items was improper. Officer Hickey was questioned by *547 the state regarding the identity of items seized from the motel room.[4] We find no abuse of discretion in the trial court's ruling that the state need not specifically mention each and every piece of physical evidence during the opening statement. See C.Cr.P. 766. Further, the questions asked of Officer Hickey, Shirley Mirambell and Jan Mirambell prior to the actual introduction of the items into evidence were necessary to establish a foundation.
Defendant also objects to the trial court's rulings that restricted re-cross to the scope of direct examination and permitted Officer Hickey to answer questions considered leading by the defense. We find no abuse of discretion.
These assignments lack merit.

Assignment of Error No. 31
By this assignment, defendant contends that the trial court erred in refusing to grant his motion for a mistrial. The motion was based on the revelation by a juror that she had been making notes regarding the case at home each evening. The juror insisted that the notes had not been brought to the courtroom or shown to anyone. We do not find that the notes composed by the juror in this case caused prejudice to the right of the accused to obtain a fair trial. See State v. Ledet, 298 So.2d 761 (La.1974).
This assignment lacks merit.

Assignments of Error Nos. 20, 21, 22, 23, 24, 25, 27
By these assignments, defendant argues that the trial court erred in admitting the alleged hearsay testimony of five witnesses. The state called five witnesses who testified that they had received telephone calls a few days before the crime was committed from an unknown male caller who sought to ascertain the victim's whereabouts.[5] The state offered the testimony to show that the conversations had in fact occurred and not for the truth of the matter asserted in the calls. Evidence is non-hearsay when offered not to show the truth of the matter asserted, but to prove that the utterance occurred or that a conversation had taken place. State v. Toomer, 395 So.2d 1320 (La.1981); State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Ford, 368 So.2d 1074 (La.1979).
Mona Draper, the roommate of Amanda Keller, testified that she received a phone call inquiring as to the whereabouts of Ms. Keller. Defendant objects to Ms. Draper's observation that the call sounded like it was being made long distance. The court instructed the jury to disregard the comment; this admonishment was sufficient to cure any error. We find no reversible error in this testimony.
These assignments lack merit.

Assignments of Error Nos. 26, 29 and 40A
By these assignments, defendant asserts that there was error in the introduction of testimony regarding a pretrial photographic line-up and an in-court identification. At no time during the trial did defendant object to the admission of the identification evidence or testimony nor was a motion to suppress the identification filed. Thus, defendant has waived his right to assert this assignment. C.Cr.P. 841.

Assignments of Error Nos. 30, 45 and 46
By these assignments, defendant urges that the trial court committed error in restricting his examination of three witnesses. These assignments are without *548 merit. During trial, the defense asked State Police Trooper Lott whether he knew if the money clip was identified after police had seized it. The state's objection on the ground of hearsay was sustained. The trial court's ruling was probably incorrect, but harmless.
During the hearing on the motion for a new trial, the defense repeated questions on re-direct already asked of Sylvester Grant by the defense on direct examination. The trial court sustained the state's objection that the questioning was repetitious. Defendant also called Marvin Johnston, supervisor of the records division of the Monroe Police Department, at the hearing in an effort to prove a deal existed between Grant and the police. The records of Grant's arrests and convictions were introduced into evidence. The state objected to Johnston reading the contents of the records out loud on the ground that the records were the best evidence and self-explanatory. The trial judge is vested with sound discretion to stop unnecessary examination and his ruling will not be disturbed unless an abuse of discretion is shown. R.S. 15:275; State v. Murray, 375 So.2d 80 (La. 1979). No abuse has been shown.
These assignments lack merit.

Assignment of Error No. 49
Defendant insists that testimony during the questioning of Detective Joe Cummings at the hearing of the motion for a new trial constitutes hearsay. In support of his motion, defendant argues that the state had failed to reveal the existence of an interview between the police and a defense witness, Gene Jurgens. Jurgens testified at the hearing. Then the state called Detective Cummings to give his version of the interview. Cummings testified that Jurgens was "nervous," "upset" and "evasive with his answers." Despite the defendant's objection, the court allowed Cummings to testify as to what Jurgens had told him during the interview. The testimony was not offered for the truth of the matter asserted; rather, it was offered to prove that the conversation had occurred and that certain statements had in fact been made by Jurgens contrary to his earlier testimony. Thus, the testimony was admissible. See State v. Launey, 335 So.2d 435 (La. 1976).
This assignment lacks merit.

Assignments of Error Nos. 47 and 48
By these assignments, defendant asserts that the state's proffer of the results of a psychological stress evaluator test conducted on Sylvester Grant constitutes error. After argument by counsel, the trial court ruled the test results inadmissible because it was not satisfied with the reliability of the test. Defendant has failed to demonstrate how this favorable ruling prejudiced him.
These assignments lack merit.

Assignment of Error No. 43
By this assignment, defendant submits that the trial court erred in denying his motion for a new trial on the ground that there is no evidence that the defendant committed the crime. See C.Cr.P. 851(1). To the contrary, the record contains substantial and convincing evidence pointing to defendant as the perpetrator of the murder.
This assignment lacks merit.
Finding no merit in the assignments, the defendant's conviction and sentence are affirmed.
CALOGERO, Justice, dissenting.
I dissent from the majority opinion and would grant defendant a new trial for the reasons expressed in the majority opinion on original hearing.
The majority determination on rehearing that defendant is not entitled to a new trial, notwithstanding his newly discovered evidence, emphasized the "questionable nature of `jailbird' testimony" (reference to Walker and Jackson who testified that Grant had confessed to them that he committed the crime). The majority concluded that defendant's new evidence was insufficient to support a finding that its admission would result in a different verdict. Their reliance *549 on the fact that "jailbird" testimony is of a "questionable nature" serves to further emphasize the extreme prejudice to defendant when the state failed to notify him until trial of the inculpatory statement attributed to him by its key witness, Grant, himself a "jailbird". Such failure on the part of the state, to notify defendant of his alleged confession (information the state had in its possession for some eight months prior to trial), as was required under La.C. Cr.P. art. 716B, prevented defendant from investigating the circumstances surrounding Grant's damning testimony.
For technical reasons expressed in the original opinion concerning defendant's failure to object to the late notification of Grant's testimony, we did not rely on the prejudicial effect of its admission at trial in our original determination to grant a new trial. However, it did in part influence our original determination (considering the patent unfairness involved) and ought at least to affect the present majority's reliance on the fact that defendant's witnesses on motion for new trial were "jailbirds".
NOTES
[1] Mary Kelly's identification of defendant is questionable in light of a photographic show-up to which Ms. Kelly was initially exposed. In defendant's assignment of error No. 26, which we do not reach, the identification is challenged as a product of the unduly suggestive show-up. As evidence of suggestiveness, defendant cites that a single photo was shown to the witness, instead of a group of photos from which the witness would be allowed to pick one recognizable to her, and that the sole photo was further highlighted by its depicting defendant's black eye.
[2] Among the items of evidence offered by the state at trial was that money clip taken from the possession of the defendant some days after the homicide, along with the testimony of several witnesses that the clip was very similar to one which they had known the victim to carry.
[3] This evidence tends to discount the testimony of the state's witness, Mary Kelly, the waitress who stated at trial that she served the defendant in the Kokomo Restaurant in Monroe on the evening of the murder. Kelly claims that the man she served was clean-shaven. Scoriels' testimony, coupled with the photographs of the defendant taken by police several days after the crime clearly showing the defendant to have a mustache, casts doubt on Kelly's identification.
[4] Since the homicide took place in the very early morning hours of Wednesday, March 8, 1978, Ms. Dufrene's testimony casts doubt on whether defendant could have been in Monroe in time to commit the crime.
[5] Defendant's pre-trial Brady motion for exculpatory evidence was answered by the state without reference to this particular aspect of the statement of Gene Jurgens (referring to Jurgens' identification of the money clip as one similar to one belonging to the defendant). See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the record reveals that the statement of Trudy Dufrene establishing defendant's alibi was noted by the state in paragraph 9-10 of its Answer to Motion for Bill of Particulars, filed April 26, 1978.
[6] The record also indicated that Sylvester Grant had been previously convicted of Forgery in an Arkansas court, and that pending against him at the time of trial were three counts of Forgery and one count each of Theft and Bond Jumping. Further, there is evidence that all charges against Grant were dismissed in the state court after defendant Naas' conviction. Prosecution was taken up in the Monroe City Court where Grant drew a total of forty days imprisonment for all of the above mentioned charges.
[7] This first of defendant's arguments deals with assignments of error numbers 2A, 3, 8, 32, 33, 34, 35, 36, 37, 38, 39, 41, 52, and 53.
[8] C.Cr.P. art. 716B reads:

"Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made."
[9] In the transcript furnished to the defense, defendant made numerous statements denying his involvement in the murder.
[10] The second of Grant's statements was ruled inadmissible at trial.
[11] C.Cr.P. art. 768 reads:

"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
[12] The reasoning of State v. Bonanno, 373 So.2d 1284 (La. 1979), is applicable to the instant case. In Bonanno, a petitioner who had failed to object at trial to the state's non-compliance with the discovery statutes was estopped from complaining on appeal because petitioner by his silence had deprived the trial judge of the chance to rectify the inequity by application of the sanctions of C.Cr.P. art. 729.5, which provides in pertinent part:

"A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate. * * *" (Emphasis provided)
In the instant case, the defendant's timely objection on appropriate grounds would have afforded the court the opportunity to have excluded the introduction of Grant's testimony at trial.
[13] The evidence is that the District Attorney was aware of the testimony of Sylvester Grant no later than June of 1978. Defendant was first noticed of this testimony on the first day of trial, February 5, 1979.
[1] Because of this finding, it is unnecessary for us to rule on the state's motion to supplement the record with testimony given by Walker and Jackson in a bribery prosecution brought against Naas for payments allegedly made to these witnesses and others in exchange for their favorable testimony at the hearing on the motion for a new trial.

We do not consider other testimony offered at the hearing of sufficient weight to meet the standard set forth in C.Cr.P. 851(3). The testimony of Connie Naas and Paul Scoriels that the money clip found in Naas' apartment resembled one owned by Naas rather than the decedent was inconclusive and not overly persuasive. If viewed in light of the test of C.Cr.P. 851(4), the state's failure to disclose the arguably beneficial statements does not amount to prejudicial error.
Also, defendant's contention that Grant's testimony at the trial was colored by a deal between him and the police was not borne out at the hearing. Neither the police officers who interviewed Grant nor Grant himself alluded to any promises or deals struck between them. Grant's testimony at the hearing paralleled his earlier trial testimony.
[2] The defense also argues that Grant's testimony which consisted of statements made by defendant to Grant is inadmissible hearsay. See Assignments of Error Nos. 32 and 36. The court properly admitted the testimony under the declaration against interest exception. Neither do we find that the state's questioning of Grant was impermissibly leading. See Assignment of Error No. 35.

Defendant also argues that the earlier statements were inadmissible because no Miranda warnings were given to defendant before he talked to Grant. This argument lacks merit. Although the defendant was in prison at the time the confessions were made to Grant, and therefore in custody, there was no interrogation by any figure of authority and no intimidating atmosphere so as to require the safeguards set forth in Miranda for custodial interrogation. See State v. McDonald, 387 So.2d 1116 (La.1980), cert. denied 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980). Defendant simply misplaced confidential information with one whom he believed to be trustworthy.
[3] Defendant also argues that the trial court committed reversible error in restricting his cross-examination of Officers Calhoun and Cummings with whom Grant had dealt. See Assignment of Error No. 33. The court ruled that defendant's questions regarding when Grant's statement was transcribed were irrelevant. Its relevance has not been shown.
[4] The evidence complained of consists of a rope, coins, grips, two coffee cups, a glove, water glass, money clip, motel bill, an unmarked copy of a police transfer receipt on the evidence, a group of photographs, clothing of the victim, a container of blood obtained from Mulhearn Funeral Home, a gun with five rounds of ammunition and a projectile taken from the victim's body, and the bottom sheet of the victim's motel bed.
[5] The witnesses were Ms. Shirley Mirambell, mother of the victim; Jan Margaret Mirambell, sister of the victim; Katherine Elizabeth Smith, the victim's receptionist; Mona Katherine Draper, the roommate of the victim's girlfriend; and Amanda Keller, the victim's girlfriend.