MARVIN, Judge.
Defendant appeals his conviction by a unanimous jury verdict of manslaughter of his son and his sentence to 18 years at hard labor. LRS 14:31, LSA-Const. Art. 1, § 20, CCrP Art. 894.1.
Two of defendant’s six assignments of error are not briefed or argued and are deemed abandoned. State v. Dewey, 408 So.2d 1255 (La.1982). Three of the remaining assignments raise issues regarding the admissibility of evidence of the choking of his wife and about defendant’s arguments with his wife and his 18-year-old son, which culminated in the manslaughter. Defendant’s final assignment concerns his sentence. We review the four assignments and affirm the conviction and the sentence.
FACTS
Defendant Williams lived with his wife and son, Phillip, Jr., in a rural settlement on the Wallace Lake Road near Shreveport. The family existed on monthly disability income received-by Mr. Williams in two checks totaling about $300 from federal agencies and on weekly earnings of Ms. Williams and Phillip from seasonal work on a truck farm in the area. Each contributed to the routine monthly expenses for the house payment, utilities, and telephone.
The homicide occurred about 8:00 p.m. on Saturday, April 30, 1983. On Friday, April 29, Phillip gave defendant $40 of the $50 he had been paid on that day. An argument followed when defendant demanded the remaining $10 that Phillip had. Defendant was drinking at the time. Phillip left home, not to return until Saturday afternoon. Ms. Williams worked on the farm on Saturday. When she returned home defendant demanded money from her. De *1213 fendant was also drinking on that day and argued with his wife over money when she would not give him but $20. Defendant and his wife left in their automobile and later drove to the home of neighbors, Mr. and Mrs. Duncan. There Mr. Williams' resumed the argument and physically attempted to take money away from Ms. Williams by choking her in the presence of the neighbors. The Duncans intervened and prevailed upon Ms. Williams to stay at their home and upon defendant to return to his home. Defendant came back to the Duncan home about 15 minutes after he left, attempting again to get his wife to accompany him. Ms. Duncan said she heard of the shooting about an hour after defendant last left her home.
In the meantime, Phillip, with three friends, returned to the Williams home but could not gain entry. Mr. Williams had padlocked the front door and had failed to place the key in its usual hiding place. Phillip, too, had been drinking on this day. He obtained a hammer and forced the padlocked hasp from the door and door frame. He entered the house and changed his shirt.
After leaving the Duncan house for the second time, defendant arrived home to find Phillip and his friends and saw that the hasp had been removed from the door facing. Defendant learned that Phillip had removed the hasp. He and Phillip argued outside and then inside the home. Phillip’s friends testified about the length (15 minutes) but not the content or substance of the argument. When Phillip came out of the house, one or more of his friends persuaded Phillip to leave with them. Phillip agreed, but said he was going back to his bedroom to get cigarettes he had left there. Phillip’s friends testified that the front door was shut and apparently unlocked. They said that Phillip was shot by defendant, who was sitting on the couch with a shotgun, just as soon as Phillip entered the room through the front door. The couch was within 12 feet of the doorway. Phillip was unarmed and, according to his friends, did not, by words or actions, threaten the defendant. The record also reveals that defendant appeared “drunk,” and that he refused to allow Phillip’s friends the use of his telephone to call an ambulance after the shooting. Phillip died from his wounds about the time that he reached a hospital in an ambulance which his friends called from another telephone.
Defendant testified. He admitted that he was drinking. He said that he and Phillip argued about money inside the home and that Phillip demanded that defendant drive him to the Duncan home to get money from his mother when defendant refused to give him any money. Defendant said that he reattached the padlocked hasp to the door after Phillip went out of the house and that he shot Phillip only when Phillip “kicked in” the door because he was afraid that Phillip was going to attack him and hurt him.
Before the trial, which occurred on September 26 and 27, the State gave notice on September 22 to defendant of its intent to introduce the “res gestae” evidence about the arguments over money and defendant’s trying to take money from his wife by “choking” her in the presence of Ms. Duncan. Defendant then moved on the first day of trial to have this evidence ruled inadmissible. The trial court deferred ruling until the evidence was offered during trial. See CCrP Arts. 521, 703.
On the second day of trial Ms. Duncan testified about the argument that occurred between defendant and his wife in the Williams’ automobile when they first parked in the front of the Duncan home:
“They [Mr. and Ms. Williams] were arguing, and I went there to the car and asked what was going on.
“What did you see?
“And Phillip was choking her.”
Defendant’s motion for a mistrial was denied after argument outside the presence of the jury. Defendant declined the court’s offer to admonish the jury (CCrP Art. 771). Defendant asked instead that his “objection” be noted and agreed with the court’s statement that “we’re ... going to have the jury come back in and we’re going to *1214 continue without going any further into [the choking] ... is that correct?” The only later reference to the choking was an unsolicited response by Ms. Duncan to the state’s question, “What did you tell Ms. Williams to do?”. Mrs. Duncan answered:
“I told Ms. Williams to get out of the car and come on in — first, [Mr. Williams] started to choking her.”
ASSIGNMENTS 2 and 3
Res gestae is defined as those necessary incidents of the proscribed criminal conduct and whatever may form one continuous transaction with, whether occurring before or after, the particular criminal conduct. LRS 15:447, 448. See State v. Johnson, 440 So.2d 838 (La.App. 2d Cir. 1983). A concise summary and analysis of the res gestae circumstances is presented in State v. Haarala, 398 So.2d 1093, 1097 (La.1981):
“The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence § 218 (3d ed. 1940).. In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48. A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required.... This close connexity in time and location is essential to the exception because no notice of the state’s intention to introduce evidence of offenses which are part of the res gestae is required ...
“This Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it .... In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place .... The concomitant other crimes do not affect the accused’s character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised .... ”
Resolution of whether the reference to the choking is admissible under the circumstances of this case will determine whether the trial court erred in denying a mistrial (defendant’s error no. three) or in deferring a ruling on defendant’s motion to exclude the evidence about the reference (defendant’s error no. two).
The state’s theory of its case was that defendant was provoked to extreme anger when his son, on the evening before, his wife, about an hour before, and his son again, only a few minutes before the homicide, argued with defendant over money. The choking incident occurred within 1½ hours of the homicide during defendant’s argument with his wife over money.
The elements, or necessary incidents, of the manslaughter, in this case are defined as a homicide which would be murder, but which was committed in sudden passion or heat of blood caused by provocation sufficient to deprive an average person of his self control and cool reflection. LRS 14:31. If the defendant was provoked by the refusal of his wife and his son to meet defendant’s demands for money, this provocation, if of reasonably close connexity in time and in distance to the homicide, may be admissible as circumstances that form one' continuous transaction with the homicide. LRS 15:447, 448.
The place of the choking (estimated by witnesses as a few blocks or a mile or so from the place of the homicide) and time (estimated by Ms. Duncan as about one to IV2 hours) are closely related to the homicide under the circumstances shown.
The jury was not told that defendant committed a crime (such as a battery) when he was physically attempting to take mon *1215 ey from his wife. The state’s emphasis was more on the argument and the attempt to take money than it was on the choking. Defendant admitted that his wife “gave” him $20. He admitted that he argued with his son over money just before the homicide (even though in his version it was the son’s demand to him and not vice versa).
Under these circumstances, we hold that the requisite close connexity was present. The evidence was relevant to show the context in which the homicide occurred. Homicides do not occur in a vacuum. In some circumstances where, as here, the sequence of events forms one continuous transaction, the res gestae exception to the prohibition against other crimes evidence is recognized to allow the complete story of the crime to be told. State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Curry, 325 So.2d 598 (La.1976).
Additionally, the defendant cannot contend that he was surprised by the evidence because the state gave him notice four days before the trial of its intent to introduce the evidence, even though such notice was not required. The state is not required to give defendant notice of other crimes evidence which were part of the res gestae. State v. Haarala, supra, State v. Prieur, 277 So.2d 126 (La.1973). The evidence was not offered to show intent or system under LRS 15:445, 446, and it was not necessary that the trial court rule on the admissibility of the evidence before trial. See State v. Naas, 409 So.2d 535 (La.1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). Compare State v. Prieur, supra. We find no error in the trial court deferring its ruling until the res gestae evidence was offered.
For essentially the same reasons, we find that the trial court did not abuse its discretion in denying defendant’s motion for a mistrial. The evidence was admissible, defendant was not surprised, and defendant declined the court’s offer to give an admonishing instruction to the jury. We also do not find that any substantial prejudice occurred to the defendant by the admission of testimony about the incident between defendant and his wife within one and one-half hours of the homicide. See CCrP Arts. 771, 775; State v. Smith, 418 So.2d 515 (La.1982).
ASSIGNMENT 4
One of the friends of the victim ' testified that the victim was “agitated” before he entered the doorway of the home just before he was shot by defendant. Defense counsel complains in this assignment that the trial court then erroneously sustained a hearsay objection to his question to this witness about what the victim said that caused him to believe the victim was agitated.
Defendant had established that the victim had been “drinking” and was drunk or intoxicated. The witness was not asked to state what he meant by “agitated,” and was not asked whether the victim used threatening words or gestures towards the defendant or towards anyone. Moreover, the defendant was allowed to recall this witness after the alleged error occurred and did not attempt to ask about res gestae words or actions on the part of the victim. Even should we find that evidence of the victim’s state of mind, under the circumstances, was admissible as an exception to the hearsay rule, we find no reversible error. CCrP Art. 921. Defendant has not shown specific prejudice to his ease and did not proffer the testimony to enable us to determine whether he was prejudiced by the trial court’s ruling. State v. Edwards, 420 So.2d 663 (La.1982), is inapposite because defendant did not attempt to show an overt act or hostile demonstration on the part of the victim toward defendant or attempt to introduce evidence of the victim’s character. LRS 15:482.
ASSIGNMENT 6
At sentencing, the trial court noted that the defendant had a history of alcohol problems and criminal activity, which included three or four DWI convictions and a 1954 conviction of aggravated rape of his then young daughter. With a prior felony con *1216 viction, defendant was not eligible for probation. The court also observed that defendant’s alcohol problem created an undue risk that defendant would commit further crimes. Among other things, the court found that the defendant did not act under “strong” provocation, that the victim did not induce or facilitate the commission of the crime, and that while there might be slight grounds tending to excuse the. defendant because of his alcohol problem, these grounds were not very substantial. The court concluded that the defendant’s attitude and his history of alcohol abuse indicated that he was likely to commit further crimes.
The record shows that the trial court adequately considered the CCrP Art. 894.1 guidelines. While the trial court’s statement about the defendant’s inability to control himself at the time of the offense is ambiguous, we read this statement as an observation by the trial court of the extent and nature of the defendant’s alcohol problem, a problem of abuse so severe that it led to the death of his own son. Apparently the trial court reasoned that similar results would be likely to recur as long as the defendant continued to abuse alcohol. In any case, the trial judge considered the defendant’s intoxication as a mitigating factor even though the defendant did not contend lack of mens rea due to severe intoxication. See LRS 14:15(2).
The trial court’s determination that the defendant lacked remorse because of his refusal to accept plea negotiations prior to trial was improper.[1] The fact that the defendant declined a plea bargain is not a proper sentencing factor. See CCrP Art. 894.1; State v. Smith, 407 So.2d 652 (La.1981). The supreme court has expressed its concern that statistics allegedly show a substantial disparity in the severity of sentences received by defendants who went to trial when compared to sentences of defendants who pleaded guilty. See State v. Oubichon, 422 So.2d 1140 (La.1982). The court found that such a disparity would raise a serious question of the chilling of Sixth Amendment rights and deprivation of due process by “vindictive” sentencing.
Notwithstanding the trial court’s improper reference to plea negotiations, the sentencing record supports a determination that the trial court properly considered all the sentencing guidelines listed in CCrP Art. 894.1. It is not apparent that the 18 year sentence imposed is an unconstitutionally severe sentence in this case. In State v. Boatright, 406 So.2d 163 (La.1981), a second felony offender was sentenced to 15 years on a plea of guilty to manslaughter. See also State v. Tompkins, 429 So.2d 1385 (La.1983), 15 years; State v. Terriault, 369 So.2d 125 (La.1979), 21 years, remanded; State v. Cunningham, 431 So.2d 854 (La.App.2d Cir.1983), 15 years; State v. Mathews, 428 So.2d 988 (La.App. 1st Cir.1983), 21 years.
CONCLUSION
Defendant’s conviction and sentence are AFFIRMED.

. "THE COURT: Okay. The Court had had a chance prior to trial to be involved in some plea negotiations. A sentence limitation was offered to Mr. Williams and he did not take it. That is an indication to the Court that he did not have a feeling of guilt about what took place. The Court noted during the trial that Mr. Williams displayed no real signs of remorse. There were one or two times I think he may have displayed some emotion, but there were no signs of remorse. I don't even think he was sorry of what was taking place.”