GARRISON, Judge.
The defendants, Michael R. Dickerson, Ellya F. Ricard and Wiffart Dickerson, were each charged by bill of information with attempted second degree murder, a violation of LSA-R.S. 14:27 (30.1), attempted forcible rape, a violation of LSA-R.S. 14:27 (42.1), and possession of marijuana with the intent to distribute, a violation of LSA-R.S. 40:966. Defendant Michael Dickerson was also charged with attempted aggravated crime against nature, a violation of LSA-R.S. 14:27 (89.1).
The charge of possession of marijuana with intent to distribute was nolle prose-quied as to all three defendants prior to trial. After trial, a jury found Michael Dickerson guilty of attempted second degree murder and attempted forcible rape but not guilty of attempted aggravated crime against nature. He was subsequently sentenced to fifty years at hard labor on the attempted murder conviction and twenty years at hard labor on the attempted rape conviction with the sentences to run concurrently.
Ellya Ricard and Wiffart Dickerson were each found guilty of aggravated battery, a responsive verdict to attempted second degree murder, and not guilty of all other charges. Each was sentenced to ten years at hard labor. All three defendants now appeal.
On April 17, 1986, the victim accepted Michael Dickerson’s offer of a ride home from her job at a local bar. Dickerson first stopped by his house to pick up something while the victim remained in the car. Dickerson later came out to the car and invited the victim inside where they drank beer and smoked marijuana. The victim then tried to leave Dickerson’s residence but was stopped by him and a struggle ensued. Dickerson summoned his brother, Wiffart Dickerson, and his cousin, Ellya Ricard, from the back of the house to help him.
According to the victim, she was told by the defendants that she was going to be raped as they tied her up with an extension cord. The defendants then stripped the victim and punched her in the face. They then inflicted second degree burns on the victim by torturing her with a hot clothes iron. They then attempted to insert a hot hair curling iron into the victim’s vagina but instead only managed to burn the victim’s inner thighs. During the course of the struggle, the victim also suffered a bloody head wound after being struck with a pool cue. Defendant Michael Dickerson also made an unsuccessful attempt to force the victim to perform oral sex on him.
The victim eventually lost consciousness after being choked by one of the defendants. When she regained consciousness, she escaped while still totally nude and flagged down a passing motorist. The police were summoned and arrived shortly thereafter to find the severely injured and apparently delirious victim pointing to the Dickerson house and proclaiming that she had been raped.
The police approached the Dickerson house and when Michael Dickerson answered the door, the officer noticed blood on his face and all over the floors throughout the house. Once inside, the officers saw bloody clothing soaking in the bathtub and found the victim’s clothes and purse in a garbage bag in the kitchen. Bloodstains were also found on the bed and on a broken pool cue. The police seized the still warm clothes iron which appeared to have human skin and hair attached to it. Also seized were two curling irons on the dining room table. The other two defendants also had blood on them.
In the first assignment of error, the defendants argue that the trial court erred in not admitting into evidence the contents of a notebook found in the victim’s purse which contained an undated and unsigned suicide note allegedly written by the victim. The defense contends that this note should have been admitted to impeach the victim’s credibility by showing that the victim was mentally disturbed and had suicidal tendencies.
*1087 On a similar issue, in State v. Aucoin, 500 So.2d 921 (La.App. 3rd Cir.1987), that court held that the trial court did not err in failing to allow the defense to cross-examine a witness about alleged mental treatment he was receiving because this evidence was irrelevant to impeach his credibility. However, if a victim’s alleged mental incapacity might impair his or her ability to perceive a crime, e.g. intoxication by drugs or alcohol, then that information would be admissible. State v. Luckett, 327 So.2d 365 (La.1975).
In this case, there is no evidence that the victim’s mental capacity was impaired on the night of her attack. The suicide note was undated and unsigned; therefore, there is no evidence that the victim wrote the note. Furthermore, her account of her attack was corroborated by other strong evidence in this case. Thus, the contents of this notebook are irrelevant to the instant case and the trial court properly denied their admission into evidence.
In the second assignment of error, the defense argues that the trial judge erred in refusing to permit defense counsel to introduce into evidence a certified copy of the victim’s criminal record after she denied on cross-examination that she had any convictions other than a theft conviction even though she had a prior municipal court conviction. In a hearing outside of the jury’s presence, the trial judge ruled that the certified copy of this municipal court conviction was inadmissible. Although LSA-R.S. 15:495 generally allows the introduction of a conviction of a crime to impeach a witness’ credibility, this rule does not apply to municipal court convictions because they are not considered “crimes” under the statute. State v. Ramos, 390 So.2d 1262 (La.1980).
Therefore, the trial judge correctly held that evidence of the victim’s municipal court conviction was inadmissible.
In the third assignment of error, the defense contends that the trial court erred in precluding the defense from a more extensive cross-examination of Detective Davis of the New Orleans Police Department. Specifically, the defense sought to pursue a line of questioning about the detective’s lack of knowledge as to what happened to the clothes iron after it was retrieved from the crime scene.
Detective Davis testified on direct examination that during her investigation at the crime scene, she noticed that the clothes iron “had traces of human hair and skin on the flat bottom of it.” On cross-examination, she identified the iron and was asked if she saw hair and skin on it at that time. Detective Davis answered that she did not but explained that anything found on the iron would have been removed by the crime lab. The detective was then asked if she had participated in the crime lab investigation to which she replied that she had not. At this point, the defense attempted to further question the detective as to her lack of knowledge regarding the clothing iron after it was removed from the crime scene but the trial judge limited this questioning by the defense.
The defense argued that his questioning was essential to challenge the detective’s credibility because she had testified as to a matter on which she had no knowledge. This assignment of error is clearly without merit. The detective’s testimony that hair and skin were present on the iron at the crime scene was within her knowledge because she participated in the investigation of the crime scene. Her testimony on cross-examination that there was no hair or skin on the iron at trial was explained by the detective’s further testimony that anything on the iron would have been removed by the crime lab and that she did not participate in the crime lab examination. Therefore, the jury was made aware by the detective’s own testimony that she saw the iron at the crime scene but did not see it once it was removed from the crime scene. Thus, the trial judge did not err in limiting the defendant’s cross-examination of Detective Davis on this issue.
In the fourth assignment of error, the defense argues that the trial court erred in denying its request to recall the victim to the witness stand for impeachment purposes. The defendant’s brief is unclear as *1088 to the basis on which the defense was going to attempt to impeach the victim’s credibility. However, the defense request to recall the victim to the stand was made following the direct examination of Detective Davis by the State in which the State asked Davis if the victim had told her at the crime scene that she had been raped. The trial judge did not allow the witness to answer this question.
The State contends that the defense wanted to impeach the victim on the basis of a prior inconsistent statement made by her to Detective Davis and another officer at the crime scene, i.e. that she had been raped, when on cross-examination she admitted that the defendants had only tried to rape her. Assuming that this is the basis of this assignment of error, it is without merit because the jury was already aware of the inconsistency of these statements because the officers testified that the victim said that she had been raped and the victim had admitted on cross-examination that the defendants had only tried to rape her.
Thus, the trial judge did not err in denying the defense request to recall the victim to the witness stand.
In the final assignment of error, the defense contends that the defendants were prejudiced by the trial judge’s “repeated admonitions and criticism of defense counsel.” A review of the trial judge’s Comments in the record reveals nothing more than an attempt by the trial judge to insure that the trial proceeded in an orderly fashion without unnecessary delays due to repetitive questioning by defense counsel.
A trial judge is vested with sound discretion to stop unnecessary examination and his ruling will not be disturbed unless abuse of discretion is shown. State v. Naas, 409 So.2d 535 (La.1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). Therefore, because the trial judge’s limitation of defense counsel’s repetitive questioning was not an abuse of discretion, this assignment of error is without merit.
For the reasons stated above, the defendants’ convictions and sentences are affirmed.
AFFIRMED.