SHORTESS, Judge.
Rodney “Buford” Johnson (defendant) was charged by grand jury indictment with the first degree murder of Howard Barbier. LSA-R.S. 14:30. He entered a plea of not guilty and not guilty by reason of insanity. Before jury selection on the day trial began, the State amended the indictment, reducing the charge to second degree murder, LSA-R.S. 14:30.1. At rearraignment, he pled not guilty and not guilty by reason of insanity. A unanimous jury found defendant guilty as charged. He received a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, but with credit for time served. On appeal, defendant asserts three assignments of error.

FACTS

Howard Barbier, the 71-year-old victim, was delivering newspapers in his personal vehicle in Assumption Parish early in the morning on June 1,1988. The police investigated after he failed to return home from the paper route and determined he disappeared a few miles south of Napoleonville. Initially, the investigation focused on Donald “Moonie” Ross, who the police picked up on the evening of June 2,1988. Ross made statements to the police. Police found the victim’s car in Thibodaux, and Ross went with them to a sugarcane field in Assumption Parish where they found the victim’s badly decomposed body. Ross was arrested the same day, June 2.[1] As a result of Ross’s statements implicating defendant in the commission of the *620 murder, defendant became a suspect. On June 3, defendant and his father came into the Assumption Parish sheriffs office. He was immediately arrested and advised of his constitutional rights. Defendant repeatedly stated, “I did not mean to hurt nobody.” Among the items in his possession was a set of three keys, each of which opened a different newspaper vending machine serviced by the victim.
The same day, after again being advised of his constitutional rights, defendant made a taped statement to Assumption Parish Sheriff Anthony G. Falterman,[2] and in the presence of Assistant District Attorney Robert Menuet. Defendant admitted he was with Ross when Ross abducted the victim; however, he maintained the murder was committed by Ross.[3]
Thereafter, defendant made three voluntary, unsolicited statements to Deputy Lonnie Cavalier, a detective in the Assumption Parish sheriffs office. In the first, on June 16,1988, defendant stated: “I feel like I have been saved. I have faith. I am sorry for what I did, but Donald killed the old man first. I only ran over him with the car. Donald beat him dead first.” In the second, on June 19, 1988, defendant stated: “I want to cut a deal. You all have to forgive me for hurting Pop, but if I can’t cut no deal, I’m ready to die.” In the third, on July 15,1988, defendant stated: “I don’t have any conscience. I don’t know what made me do this. I did not mean to run over Pop.”
William Russell Gaines, a former inmate who was incarcerated with defendant at the Assumption Parish Detention Center, testified that defendant originally maintained (as he had to Sheriff Falterman) that Ross committed the murder. Later, defendant told him he was being haunted by the victim and needed to talk to somebody, and, sometime between June 1988 and July 1988, defendant made a detailed confession to him, then confessed to him on several occasions thereafter.
In confessing to Gaines, defendant stated the following: He was with Ross on June 1, 1988, trying to hitchhike to Thibodaux. They first tried to flag down another newspaper route man who did not stop. They then flagged down the victim. Defendant put a “Rambo knife” under the victim’s throat and told him to get out of the car. The victim got out of the car, and one of them hit him. They took the car, rode to “the back,” and then returned. Making the victim get in the car, they then abducted him. They took the victim back to Miráis Lane and took 50 cents from him. They tried to make him “tell them about some more money” and then began beating him. When the victim failed to say anything about additional money, defendant got a tire tool, and Ross used it to hit the victim. Ross told defendant to hit the victim. Defendant took the tire tool and hit the victim with it “a few times.” Ross told *621 defendant to hit the victim in the back of his head where his brain was so he would die. Defendant hit the victim in the back of his head. However, when he would not die, defendant stabbed the victim with the tire tool. He still would not die. Ross and defendant dragged him behind the car, and defendant drove the car over him several times. They dumped the victim’s body in a field and took his car, traveling toward New Orleans.
Later, on August 10,1988, defendant made a voluntary, unsolicited statement to Assumption Parish Deputy Sheriff Erie Miles at the Donaldsonville Mental Health Center while Miles and defendant were in a conference room at the Center waiting for medication. Shortly after defendant had made some vulgar statements of a sexual nature to one of the nurses, Miles asked defendant “what was wrong.” Defendant said he was thinking about the murder and then related a confession substantially similar to the confession to Gaines. Miles testified it took about ten minutes for defendant to give the confession, and defendant smiled and laughed, was coherent, and did not ramble while relating it. When Miles returned to the Detention Center, upon instructions from his supervisor Warden Ronnie Daigle, he wrote a report which included the substance of the confession and gave it to Daigle, along with a separate report regarding the altercation defendant had with the nurses.

FACTUAL BACKGROUND FOR ASSIGNMENTS OF ERROR NOS. ONE, TWO, AND THREE:

Because the issues raised in these assignments and their factual and procedural context are interrelated, we address them together.[4] In assignment one, defendant contends the trial court erred by denying his motion to exclude Miles’ testimony relating the confession made on August 10, 1988. In assignments of error two and three, defendant asserts the trial court erred by denying his plea of double jeopardy and supplemental plea of double jeopardy based on his contention that allowing the State to reopen its case-in-chief violated the constitutional proscription against double jeopardy.
Trial began on March 23, 1992. During the State’s presentation of its case-in-chief, but outside the jury’s presence, the State introduced Miles’ testimony to comply with the foundation requirement of Louisiana Revised Statute 15:451[5] regarding the free and voluntary nature of the confession. Miles testified that when he asked defendant “what was wrong,” he inquired, not to interrogate defendant, but because defendant appeared nervous, and defendant gave the confession in response to this single inquiry. When Miles testified that he had included the substance of the confession in the report he gave to Daigle, defense counsel advised the trial court he was entitled to examine the report to determine whether Miles’ testimony was consistent with the written account of the confession included in the report. The prosecutor said she did not have the report, had not seen it, and would not know where to look for it.[6] The trial court accepted the State’s response but offered to issue subpoenas to obtain the report. The record reflects the court issued subpoenas requested by defendant for this purpose.
Defendant then introduced the testimony of Assumption Parish Sheriff Thomas Mabile and that of the former sheriff, Falterman. Mabile testified the sheriff’s office files were searched, but the search failed to locate the report. Falterman testified he did not remember such a statement was given and when he assumed the office of District Attorney he never took possession of the file pertaining to defendant’s case. Instead, he instructed his assistants to send the file to the Attorney General’s office because of his involvement in the criminal investigation when he was sheriff.
*622 Thereafter, Miles was recalled for defendant to continue cross-examination on the predicate for admission of the confession defendant gave to Miles. Subsequently, the State made a motion to have Miles’ testimony relating the confession admitted as evidence before the jury. Defendant objected and argued that Miles’ testimony should be excluded until his hand-written report, which included the substance of the confession, was produced. The trial court, however, excluded Miles’ testimony relative to the confession because Miles had not given defendant his Miranda rights at the time of the confession and because an accused’s unsolicited spontaneous statement could be three or four seconds long but not ten minutes duration (the approximate length of defendant’s confession to Miles). After a weekend recess, the State requested that the court reconsider its ruling precluding Miles’ testimony. The trial court denied the motion, and the State gave notice of its intention to apply for supervisory writs. The trial court declined to stay the trial pending our action on the writ application. The State then rested its case-in-chief with the “stipulation” that if the first circuit reversed the trial court’s ruling on the admissibility of Miles’ testimony relative to the confession, it would produce that testimony subject to cross-examination by the defense.
The defense then began presenting its case-in-chief, but was interrupted by a stay ordered by this court on March 30, 1992, pursuant to the State’s writ application. On April 2, 1992, this court lifted the stay order and granted the State’s writ application, noting that the issue of Miranda warnings does not relate directly to the foundation requirement of Revised Statute 15:451. We said the Miranda issue should have been raised by defendant in a motion to suppress filed prior to trial. See La.C.Cr.P. art. 703. We also concluded that the trial court erred in ruling the confession was inadmissible for the reason that Miles had not issued Miranda warnings because the confession was not the product of interrogation. We also found the trial court had not ruled with regard to the foun-datum required by Revised Statute 15:451 and remanded the matter to the trial court for continuation of the predicate of laying the foundation.
On April 3, 1992, the defense rested its ease-in-chief. Defendant’s counsel then argued Miles’ testimony should be excluded pursuant to discovery sanctions because the confession was reduced to writing by Miles and defendant was entitled to the writing. The State, in opposition, argued that Miles’ report was not discoverable pursuant to Louisiana Code of Criminal Procedure article 716 because the confession was oral and not written. The trial court found the statement was entirely too suspect to admit into evidence, ruled the confession inadmissible, and cited its evaluation of Miles’ testimony as a basis for its ruling. The State asked for a ruling on the discovery issue, but the court declined, indicating it did not think the issue was before the court.[7] The State announced its intention to apply for supervisory writs a second time, and the trial court again declined to grant a stay of the trial. Defense counsel reiterated defendant was resting his case-in-chief, and the State then began presenting its case on rebuttal. Later that same day (April 3, 1992) the trial was stayed by the first circuit pursuant to the State’s second writ application.
On April 7, 1992, this court denied defendant’s motion to dismiss, lifted the stay order, and granted the State’s application. We noted that although police misconduct was not at issue and Miranda warnings were not required, the State was still required to lay the foundation required by Revised Statute 15:451 showing the confession was freely and voluntarily given. We found that, based on the evidence presented at the hearing on the foundation requirement, the trial court was not justified in finding the confession was not freely and voluntarily given. We also said the issue of admissibility of the confession is a question of law to be decided by the trial court and that the weight given to the confession, if it is found admissible, is a question *623 for the jury. See State v. Vaccaro, 411 So.2d 415, 423 (La.1982); State v. Glover, 343 So.2d 118, 127 (La.1977) (on rehearing). We further found that because of unusual circumstances, basic fairness required the foundation hearing be reopened to allow the State and defendant to present evidence related to defendant’s mental capacity to make a free and voluntary confession. Consequently, we remanded for a reopened hearing on the foundation, stating, in pertinent part:
If the confession is found not to be admissible and if the state immediately gives notice of its intent to seek review by this Court, the district court shall set a return date ... and stay the trial on the merits until this Court rules on the state’s application for writs.
If the confession is found to be admissible, the district court shall allow the state to reopen its case in chief for purposes of admitting the confession into evidence. See La.C.Cr.P. art. 765(5); State v. Bonanno, 373 So.2d 1284 (La.1979).
On April 9,1992, trial resumed. The court reopened the foundation hearing before the State was permitted to continue rebuttal.
At the reopened hearing, defendant argued Miles’ handwritten report was discoverable and requested that the trial court exclude Miles’ testimony relating the confession because the State had not produced the report.
In response, the prosecutor argued defendant was informed of the confession to Miles by the State in an August 15, 1991, supplemental answer to defendant’s motion for discovery, and defendant had time to interview Miles prior to the trial.[8] Additionally, the prosecutor noted the confession was oral and not written, and that the State had never seen Miles’ written report and had no idea where it was. The prosecutor also observed the apparent impossibility of locating the report, noting that defendant had called several witnesses and had been unable to locate it.
The trial court denied defendant’s motion to exclude Miles’ testimony, and, in particular, denied defendant’s request that the testimony be excluded as a discovery sanction. Defendant and the State next presented evidence related to the free and voluntary nature of the confession to Miles.
At the conclusion of the reopened hearing, the trial court found defendant was suffering from a mental disease or defect. The trial court stated it knew “the [first circuit] has ruled on the credibility question,” but that the trial court continued to be unconvinced that what Deputy Miles said happened, actually had happened. In any event, the trial court concluded, the confession was not free and voluntary considering the circumstances under which it was given and the fact that defendant was suffering from a mental disease or defect at the time he confessed.
The State notified the court of its intent to again apply for supervisory writs. The trial court stayed the trial on April 10, 1992, until this court could rule on the State’s third writ application. On April 15, 1992, this court reversed the trial court’s ruling that the confession to Miles was not free and voluntary. We stated the following:
We are at a loss to understand the district court’s reference to a “credibility question.” The credibility of Deputy Miles in the context of deciding whether or not the confession was ever made in the first instance is a question of fact to be decided by the jury, the trier of fact. This Court has no authority to decide that issue of credibility and certainly has not done so. Neither is it within the province of the district court to decide that issue. Moreover, there was no testimony whatsoever at the foundation hearing which would form any basis for a determination that defendant did not make the confession in the first instance. The time frame and *624 other circumstantial indications actually were supported by the testimony of several other witnesses. Therefore, we expressly disapprove of the district court’s decision to the extent that the district court may have based its ruling that the confession was not freely and voluntarily made upon its opinion that the confession was not made in the first instance.
Moreover, a thorough review of the transcript of the foundation hearing convinces us that the state more than adequately carried its burden of proof beyond a reasonable doubt that the confession was freely and voluntarily made. Furthermore, the evidence likewise convinces us that defendant obviously failed to carry his burden of proof by a preponderance of the evidence that some mental incompetence vitiated the free and voluntary nature of that confession.
Therefore, we reverse the district court’s ruling that the confession is inadmissible and order that the state be allowed to reopen its case in chief for the purpose of admitting the testimony of Deputy Miles regarding the confession. Thereafter, the defense shall be allowed to re-open its case in chief to present whatever admissible evidence it elects to introduce, not limited to the issue of the confession. Finally, the state shall be allowed full right of rebuttal.
When trial resumed April 16,1992, defense counsel objected to this court’s order to allow the State to reopen its case-in-chief and reurged his written plea of former jeopardy first made in response to the State’s second writ application.[9] Consistent with our orders, the trial court denied the plea of former jeopardy, and the trial court allowed the State to reopen its case-in-chief to present Miles’ testimony relating the confession. The State then rested its case-in-chief.
Following a recess, trial resumed with defendant again urging his plea of former jeopardy, which the trial court again denied. The defense then reopened its case-in-chief, and, finally, the State presented evidence on rebuttal.

ASSIGNMENT ONE

Defendant makes two arguments in support of his contention that the trial court erred by denying his motion to exclude Miles’ testimony concerning his alleged confession. First, he claims the State’s supplemental answer to his motion for discovery failed to comply with the provisions of Louisiana Code of Criminal Procedure article 729.3 because the amended answer did not have a “show cause order” attached for the trial court’s signature. Secondly, defendant submits that, pursuant to Code of Criminal Procedure article 17, the trial court had a duty to protect the record of the trial proceedings from being tainted with Miles’ testimony, which the trial court had determined to be unconvincing.
Defendant never objected at trial to the form of the supplemental answer to the motion for discovery. A defendant is limited on appeal to grounds for objection articulated at trial. A new basis for objection, even if meritorious, cannot be raised for the first time on appeal. State v. Brown, 481 So.2d 679, 686-687 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986). Since defendant’s first argument was not properly raised before the trial court, it is not properly before this court on appeal.
Furthermore, under the circumstances, we find no noncompliance with discovery by the State. The State’s amended answer to the discovery motion was filed August 15, 1991. Defense counsel has never contested his receipt of a copy of the answer. The State maintains it fully complied with its continuing duty to disclose discoverable information as soon as the confession to Miles became available to the State, and the record does not contain any evidence to the contrary. Despite knowledge of the confession for over seven months prior to trial, defendant never sought a continuance of the trial because of the State’s alleged noncompliance witf, discovery and defendant never requested any additional discovery in regard to this confession.
*625 Moreover, although defendant does not argue this on appeal, assuming arguendo that he was entitled to Miles’ written report, the record reflects it was not in the possession or under the control of the State and apparently was unavailable.
Finally, defendant does not show prejudice by the failure to obtain a copy of the report. Nor does the record substantiate any prejudice to defendant through the unavailability of the report. Therefore, defendant’s first argument is without merit.
In his second argument, defendant submits the trial court had a duty to protect the record from being tainted with Miles’ testimony, which defendant asserts was determined by the trial court to be unconvincing. This argument rests upon the authority of the trial court to determine Miles’ testimony was false. In granting the State’s second writ application, we stated that the issue of the admissibility of the confession was a question of law for the district court to decide and the weight given to the confession was for the jury to decide. In granting the State’s third writ application, we stated that neither this court nor the trial court had authority to decide the issue of Miles’ credibility. Additionally, and more particularly, our third order noted that no testimony whatsoever at the foundation hearing formed any basis for a determination that defendant did not make the confession. We further noted that the time frame and other circumstances corroborated the testimony of other witnesses. Consequently, we expressly disapproved of the lower court’s decision to exclude Miles’ testimony to the extent that the decision was based on the court’s opinion that the confession was not made.
After carefully reviewing the entire record, we adhere to all our prior orders issued during the course of trial. Cf. State v. Daniels, 552 So.2d 781, 784 (La.App. 1st Cir. 1989), writ denied, 558 So.2d 581 (La.1990). Since the record actually supported the existence of the confession, the basis for any alleged duty to protect the record from tainted testimony is not only unsubstantiated, but also contradicted by the record. Accordingly, we need not and do not decide whether there was a duty to protect the record.

ASSIGNMENTS TWO AND THREE

In these assignments, defendant argues the trial court erred by denying his plea of double jeopardy and supplemental plea of .double jeopardy. Defendant argues that allowing the State to reopen its case-in-chief violated his constitutional protection against double jeopardy. Consequently, defendant submits that our order allowing the State to reopen its case-in-chief for the purpose of admitting Miles’ testimony had the effect of violating defendant’s right to a fair trial.
Defendant presented no new arguments on appeal on this issue. We maintain the position we took previously for reasons already stated. Moreover, there were no successive prosecutions in this case. Defendant was tried and found guilty of the charged offense by a single jury at a single trial. See State v. Johnson, 529 So.2d 466, 471-472 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
These assignments lack merit.

PATENT SENTENCING ERROR

After reviewing the record for patent error, we have discovered the sentencing minute entry does not reflect that the trial court gave defendant credit for time served, although the transcript of sentencing does so state. See La.C.Cr.P. art. 880. Resentenc-ing is not required. However, we remand the ease and order the district court to amend the commitment, if necessary, and the minute entry of the sentencing to reflect that defendant was given credit for time served. See, State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992).
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH ORDER.

. Donald Ross was tried and convicted of the first degree murder of Howard Barbier. He received a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. On appeal, we affirmed the conviction. See State v. Ross, 572 So.2d 238 (La.App. 1st Cir.1990).

. Falterman was subsequently elected District Attorney of the Twenty-third Judicial District Court, which includes the Parish of Assumption. The record reflects that he succeeded from the office of sheriff to the office of district attorney ' on January 1, 1991.

. In his taped statement, defendant said he was with Ross on the morning of June 1; that Ross stopped the victim's car, put a knife to the victim's throat, and made the victim get out of the car; that Ross hit the victim with his fist, knocking him to the ground; that at Ross's insistence, defendant got into the victim’s car; that they drove off with Ross driving; that after Ross stopped the car, Ross searched the car and trunk; that Ross also searched the victim's wallet, which was on the seat inside the car; that he stayed inside the car and did not assist in the searches; that after Ross reentered the car, they drove to a location where they found the victim talking on the telephone; that Ross stopped the car, jumped out, put a knife to the victim’s throat and forced the victim to get inside the car on the front seat between Ross and him; that Ross drove away and again stopped the car; that he got out of the car and started to walk away; that Ross opened the trunk of the car and removed a tire tool; that he tried to take the implement away from Ross when he realized what Ross was going to do; that Ross threatened him with the knife, nearly cutting him; that he jumped back and started walking away from the scene; that he looked back and saw Ross strike the victim over the head four or five times with the tire tool; that while still walking away, he also observed Ross driving the car four or five times forward and backward over the victim’s body; that Ross told him to get inside the car and go with him to New Orleans; that, instead, he walked home. He denied any knowledge of what Ross did with the victim's body and denied he went to Thibo-daux in the victim's car.

. We will also treat each assignment of error separately hereafter for the sake of completeness.

. Louisiana Revised Statute 15:451 provides as follows:
Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.

.The Attorney General’s Office took over prosecution of this case in January 1991.

. The record reflects that only moments before the trial court declined to rule on the discovery issue, defense counsel called to the court’s attention the fact that the court had not ruled and indicated he did not expect the court to rale on the issue by stating the following: ”[y]ou didn’t act on our [discovery] motion and we don't except (sic) you to act on it....”

. The record clearly shows the State informed defendant in its supplemental answer to the motion for discovery (filed August 15, 1991) that defendant had on or about August 10, 1988, made an oral, unsolicited statement to Deputy Eric Miles at the Donaldsonville Mental Health Clinic in which defendant admitted killing the victim and told of the circumstances of the crime. The supplemental answer also disclosed the following:
The statement also included admissions of a plan to commit rape, a statement that the defendant "loved to rape white bitches” and that the defendant had robbed and raped a black female immediately following the crimes committed against Howard Barbier.

. It was in granting the second writ application that we first ordered the district court to allow the State to reopen its case-in-chief if the confession was found admissible.